UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ROBERT E. SHAPIRO,<br>              Plaintiff,<br><br>       v.<br><br>UNITED STATES SOCIAL SECURITY<br>ADMINISTRATION,<br>              Defendant. | Docket No. 2:19-cv-000238 |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACT AND STATEMENT OF DISPUTED FACT**

NOW COMES the plaintiff, Dr. Robert E. Shapiro ("Plaintiff"), and through his undersigned counsel submits his Response to Defendant's Statement of Undisputed Material Facts it submitted in support of its Motion to Dismiss, or, in the Alternative, for Summary Judgment [Doc, 14], and his own Statement of Disputed Facts, pursuant to FRCP 56(c) and Local Rule 56(a)-(b).

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACT**

1. Plaintiff filed an electronic FOIA request with SSA, dated October 5, 2018, stating as follows:

I seek all documents, regardless of age, pertaining to SSA assessment, evaluation, and decisions regarding inclusion or exclusion of a proposed listing for impairments due to migraine and other headache disorders in the SSA Listing of Impairments (Blue Book). These documents should relate to, but not be limited to, the 2013 to 2016 process of SSA rules-making, ANPRM, NPRM and final rules-making/or revision of Medical Criteria for Evaluating Neurological Disorders listings (11.00 Neurological – Adult). These documents should include, but be not limited to, all relevant correspondence, emails, memoranda, drafts, cost-benefit analyses, public comments, and related guidance documents, including those documents from and between all relevant SSA offices (i.e., Office of Regulations and Reports Clearance, Office of Disability Policy, Office of

1

General Counsel, Offices of the Chief Actuary and Budget, etc.), as well as those document from and between SSA offices and offices of other Federal Government agencies. I also seek all documents (i.e. from SSA Office of Disability and Policy or other SSA offices), regardless of age, pertaining to, and/or informing, guidance as to how Listings of Impairments (e.g. 11. 02 Epilepsy) are to be appropriately utilized and interpreted (i.e. by SSA adjudicators and administrative law judges) in order to assess and determine medical equivalency and impairments attributed to, or caused by, migraine or other headache disorders, such as cluster headache.

**RESPONSE: Undisputed.** *See* **Complaint, at Ex. 1.**

2. Defendant received the request and assigned the tracking number SSA-2019-000087.

**RESPONSE: Undisputed.** *See* **Complaint, Ex. 1, at Ex. C.**

3. In response to Plaintiff's FOIA request, Defendant issued a May 29, 2019 fee notice requesting payment of $2,908. The notice explained the agency was issuing a fee notice under 42 U.S.C. § 1306(c) and 20 C.F.R. § 402.175, which grants it the ability to charge fees for non-program related information requests notwithstanding FOIA.

**RESPONSE: Undisputed, though the document speaks for itself.** *See* **Complaint, Ex. 1, at Ex. B.**

4. On or about June 5, 2019, Plaintiff agreed to pay the fee.

**RESPONSE: Undisputed.** *See* **Complaint Ex. 1, at Ex. D.**

5. On July 26, 2019, Defendant issued an initial decision on Plaintiff's FOIA request, which released two memorandums and explained SSA was withholding 1,377 pages of responsive documents under FOIA Exemptions 5 and 6.

**RESPONSE: Undisputed, though the document speaks for itself.** *See* **Complaint Ex. 1, at Ex. A.**

6. On or about August 23, 2019, Plaintiff appealed Defendant's initial decision on his FOIA request, due to withholding of responsive documents and the fee assessed by the agency.

**RESPONSE: Undisputed.** *See* **Complaint, Exs. 1-2.**

7. Defendant received the appeal and assigned the tracking number SSA-2019-003518.

**RESPONSE: Undisputed.** *See* **Complaint, Exs. 3-4.**

8. On December 20, 2019, when this Complaint was filed, Defendant was still processing Plaintiff's appeal and had not yet issued a decision.

**RESPONSE: Undisputed to the extent that Defendant had not issued a decision on Plaintiff's appeal as of the date Plaintiff filed his Complaint.**

9. Upon review of Plaintiff's administrative appeal, Defendant concluded its initial interpretation of Plaintiff's FOIA request was too narrow and that the initial search performed in response to Plaintiff's FOIA request was not reasonably calculated to obtain all records responsive to his FOIA request. For instance, prior to issuing its initial decision, the agency did not search all offices that may reasonable have responsive records.

**RESPONSE: Undisputed.**

10. Upon further review and searches in response to Plaintiff's appeal, Defendant concluded that Plaintiff's request was unreasonably broad and burdensome for the agency to process.

**RESPONSE: Undisputed that this is the conclusion Defendant reached. Plaintiff disputes that the request is unduly broad and burdensome.**

11. Defendant's conclusions about the unreasonably broad nature of Plaintiff's request was based on the lack of limitations in the scope of the records requested. Specifically, Plaintiff requested records without time limitations; without limitation on the type of records; from all agency offices, including external communications; and in a broad subject area.

**RESPONSE: Undisputed to the extent this statement reflects Defendant's conclusion. Plaintiff disputes that his request was unreasonably broad.**

12. Defendant's conclusions that it would be unreasonably burdensome for the agency to process the request stemmed from its searches, undertaken subsequent to Plaintiff's administrative appeal, attempting to identify records responsive to Plaintiff's request. Among other actions, SSA's searches included an electronically stored information (ESI) search of agency email records of 134 potential custodians, from almost every SSA Headquarters office. Defendant's subsequent search efforts resulted in identification of 1,581,644 pages of records that could be potentially responsive and that would require further agency review.

**RESPONSE: Undisputed to the extent this statement reflects Defendant's conclusions. Plaintiff disputes the reasonableness of these numbers given the irrelevance of the documents Defendant produced and withheld pursuant to its July 26, 2019 response. Plaintiff's Statement of Disputed Fact, ¶¶ 10-11.**

13. In order to complete its review of the records identified, which would require a line-by-line review due to the nature of the documents requested and the high likelihood that they are subject to the deliberative process exception, Defendant estimates that it

would require at least 193,311 hours of full-time work dedicated solely to Plaintiff's request. This review is estimated at a cost of $7,293,140.

**RESPONSE: Undisputed to the extent this statement reflects Defendant's conclusions. Plaintiff disputes the reasonableness of these numbers given the irrelevance of the documents Defendant produced and withheld pursuant to its July 26, 2019 response. Plaintiff's Statement of Disputed Fact, ¶¶ 10-11.**

14. Processing Plaintiff's request would severely interfere with SSA's ability to complete its FOIA workload, including mandatory FOIA reports, meeting proactive disclosure requirements, responding to congressional inquiries, satisfying information requests under other statues, and assisting members of the public with obtaining information requests directly related to their Social Security benefits.

**RESPONSE: Undisputed to the extent this statement reflects Defendant's conclusions. Plaintiff disputes the reasonableness of these numbers given the irrelevance of the documents Defendant produced and withheld pursuant to its July 26, 2019 response. Plaintiff's Statement of Disputed Fact, ¶¶ 10-11.**

## PLAINTIFF'S STATEMENT OF DISPUTED FACT

1.     Plaintiff is a medical doctor. He is currently a Professor of Neurological Sciences at the Larner College of Medicine at the University of Vermont. Aside from his teaching and research duties, he treats patients for migraine and other headache disorders, as well as other neurological disorders. [Complaint, ¶ 5; Affidavit of Dr. Robert E. Shapiro ("Shapiro Aff."), ¶ 3].

2. He is a member of the American Board of Psychiatry and Neurology, specializing in Neurology, and is certified in field of Headache Medicine by the United Council for Neurological Subspecialties. He is the founding president of the Alliance for Headache Disorders Advocacy (AHDA), a national organization under IRC § 501(c)(6), advocating on behalf of public interests of Americans with disabling headache disorders, and is a past member of the Board of Directors of the American Headache Society. [Complaint, ¶5; Shapiro Aff., ¶ 3].

3. Plaintiff has authored numerous peer-reviewed articles and other scholarly research on migraine disability, headache disorders, and other neurological disorders. [Shapiro Aff., ¶ 5].

4. Plaintiff submitted his FOIA request in pursuit and in continuation of his scholarly research. [Complaint, ¶ 28; Shapiro Aff., ¶ 7].

5. It is also in the public interest that SSA be compelled to produce documents responsive to Plaintiff's request. [Shapiro Aff., ¶ 7]. At the time Plaintiff submitted his FOIA request, on October 5, 2018, there was virtually no information in the public domain regarding the process of revision of the Blue Book listings that may be specifically applicable to SSDI/SSI claimants with migraine and headache disorders, or guidance documents for such claimants regarding how to most appropriately apply Blue Book listings in making their claims. [Shapiro Aff., ¶ 8].

6. At the time of Plaintiff's FOIA submission, Plaintiff knew of only two SSA documents (Complaint, Ex. 1, at Exs. G, J) in the public domain that shed any light on how those suffering from migraines might apply the Blue Book listings in making claims for SSDI. [Shapiro Aff., ¶ 9]. As set forth in Plaintiff's administrative appeal

(Complaint, Ex. 1), the SSA stated, both in the 2016 final-ruling making for the revision of the Blue Book Neurological Listings (81 Fed. Reg. 43048 (2016)), as well as in a letter from Acting SSA Administrator Colvin to Senate Finance Committee Chairman Max Baucus (Complaint, Ex.1, at Ex. K), that directly relevant guidance had been provided to SSA adjudicators, but had been deliberately withheld from claimants: "Our adjudicators have received specific training and policy guidance on how to evaluate migraine and cluster headaches." [Shapiro Aff., ¶ 9].

7. Very limited relevant information may be gleaned from documents issued not by SSA, but by the SSA OIG (SSA OIG, The Social Security Administration's Listing of Impairments (A-01-08-18023), March 2009; SSA OIG, The Social Security Administration's Listing of Impairments (A-01-15-50022), September 2015), the GAO (GAO, Modernizing SSA Disability Programs, Preliminary Observations on Updates of Medical and Occupational Criteria (GAO-12-511T), March 2012), and the National Academy of Medicine (NAM, Improving the Social Security Disability Decision Process (2007)). [Shapiro Aff., ¶ 9]. These sources do not provide insight as to why the Defendant decided not to include a migraine and headache disorders listing during the 2016 rule-making.

8. SSA's production of documents responsive to Plaintiff's request would help inform the public about the process for disability evaluations for migraine and other headache disorders involving the Blue Book, how such SSA disability evaluations are decided, and how Defendant makes such disability evaluations. [Shapiro Aff., ¶ 7].

9. Migraine affects approximately 50 million (15%) Americans, with its greatest prevalence in those between the ages 20 to 50 years, the most important years of

employment [Shapiro Aff., ¶ 6]. (Global Burden of Disease Study, https://vizhub.healthdata.org/gbd-compare/). Migraine is the second leading cause of all U.S. disability (5.1% of years lived with disability), and the most common cause of disability for Americans less than 50 years of age. [Shapiro Aff., ¶ 6]. (Global Burden of Disease Study, https://vizhub.healthdata.org/gbd-compare/). Federal regulations direct SSA to include Blue Book listings for the common causes of disability. [Shapiro Aff., ¶ 11]. (42 Fed. Reg. 14706 (1977); 44 Fed. Reg. 18175 (1979); 50 Fed. Reg. 50069 (1985)). However, there is no Blue Book listing for migraine. [Shapiro Aff., ¶ 11]. Further, migraine impairments are symptoms, for which there are no reliable diagnostic physical signs or laboratory findings. [Shapiro Aff., ¶ 11]. Yet, federal regulations prohibit claimant symptoms from supporting SSDI/SSI eligibility as Medically Determinable Impairments in Sequential Evaluation. [Shapiro Aff., ¶ 11]. (56 Fed. Reg. 57941 (1991)). This prohibition violates federal statute. 29 U.S.C. § 794(a). Partially as a consequence of these regulatory barriers to recognition of migraine impairments in Sequential Evaluation, SSDI claimants for migraine have among the lowest participation rates (0.3% of all SSDI claimants) (https://www.ssa.gov/policy/docs/ssb/v73n2/v73n2p39.html#tableA1), relative to migraine disability burden. [Shapiro Aff., ¶ 11]. Further, among those few individuals who do file migraine claims for SSDI, the initial allowance rates are exceptionally low (23%) relative to all claimants (46%). [Shapiro Aff., ¶ 11]. (https://www.ssa.gov/policy/docs/ssb/v73n2/v73n2p39.html#tableA1). In 2013, to begin to address this disparity, 13 U.S. non-profit advocacy organizations submitted to SSA a draft Blue Book listing for migraine and headache disorders. [Shapiro Aff., ¶ 11; *see also*

Complaint, Ex. 1]. Included with the draft Blue Book listing were data alerting SSA to the huge contribution of migraine to the disability burden of the United States. [Shapiro Aff., ¶ 11]. In 2014, SSA issued a Notice of Proposed Rulemaking (NPRM) to revise the Neurological Listings (11.00) (79 FR 10636). [Shapiro Aff., ¶ 11]. During the NPRM, SSA received more than 800 public comments supporting adding a Blue Book listing for migraine and headache disorders. [Shapiro Aff., ¶ 11]. In 2016, in the final rule-making, SSA did not add a Blue Book listing for migraine and headache disorders, and offered no justification or explanation for this decision (81 Fed. Reg. 43048 (2016)). [Shapiro Aff., ¶ 11].

10. In response to Plaintiff's initial FOIA request, SSA produced two memoranda and withheld 1,377 pages of responsive documents it claims fall under FOIA exemptions 5 and 6. [Shapiro Aff., ¶ 12; Complaint, Ex. 1, at Exs. A, E, F].

11. Based on Plaintiff's review of the two memoranda Defendant produced, Plaintiff has determined they are irrelevant to his request. [Shapiro Aff., ¶ 13]. Neither contains the terms "headache" or "migraine," and the documents do not pertain in any way to the assessment of SSDI/SSI claimants' impairments for migraine or headache disorders under the Listing of Impairments. [Shapiro Aff., ¶ 13].

DATED at Middlebury, Vermont this 22nd day of September, 2020.

                        LANGROCK SPERRY & WOOL, LLP

*[signature]*

_____
Emily J. Joselson
Justin G. Sherman
PO Drawer 351, 111 S. Pleasant Street
Middlebury, VT 05753
ejoselson@langrock.com
jsherman@langrock.com
Phone:  802-864-0217

***Attorneys for Plaintiff Robert E. Shapiro***

1125180.1