UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ROBERT E. SHAPIRO,<br>               Plaintiff,<br><br>    v.<br><br>UNITED STATES SOCIAL SECURITY<br>ADMINISTRATION,<br>               Defendant. | Docket No. 2:19-cv-000238 |

**PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

NOW COMES the plaintiff, Dr. Robert E. Shapiro ("Plaintiff"), and through his undersigned counsel submits the following Memorandum in Support of his Cross Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56, and his Opposition to Defendant United States Social Security Administration's ("Defendant" or "SSA") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. [Doc. 14 ("SSA Motion")].

**INTRODUCTION**

Plaintiff is a neurologist who dedicates much of his practice and advocacy to helping patients and individuals who suffer from neurological disorders, particularly headache disorders such as migraine. On October 5, 2018, he submitted a Freedom of Information Act ("FOIA") request seeking from Defendant documents pertaining specifically to the SSA Listing of Impairments ("Blue Book"), with regard to how SSA develops policies and rules, and assesses, evaluates, and makes decisions, for claimants seeking benefits due to impairments and disability arising from migraine and other headache disorders. There is limited information in the public domain on these topics, despite migraine affecting

1

approximately 50 million Americans. Plaintiff requested this information for his own scholarly research and to help inform claimants and the general public about this important issue.

After Plaintiff filed his request, Defendant failed to submit a timely response, which was due 20 business days after Plaintiff's submission. When it finally responded 294 days later, Defendant produced two documents that contained no reference to headache disorders or migraine, withheld 1,377 pages of documents purportedly under Exemptions 5 and 6, and assessed Plaintiff a fee of $2,908. Plaintiff filed an administrative appeal seeking (1) access to the withheld documents and (2) for waiver of the assessed fee. Again, Defendant did not issue a timely determination, due 20 business days after Plaintiff's filing. Plaintiff waited 87 days after Defendant's deadline passed before filing this complaint.

After Plaintiff filed suit, Defendant determined there were far more responsive documents: in fact, more than 1.58 million additional pages of responsive documents. It has not produced any of these documents, nor any of the 1,377 pages it previously withheld purportedly pursuant to Exemptions 5 and 6, and has refused to refund Plaintiff the $2,908 fee.

By withholding responsive documents in response to Plaintiff's request, Defendant runs afoul of the core tenets of the FOIA: the right of citizens to be informed about their government, the need to hold governors accountable to the governed, and to provide a check on potential corruption. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). Because Plaintiff complied with the FOIA, and his request reasonably described agency records, he is entitled to the information Defendant has refused to produce. Granting Plaintiff access to these documents is consistent with the FOIA's goals, and will help shed light on an

aspect of an agency's decision making that impacts millions of people but has largely operated in secrecy.

Accordingly, Plaintiff respectfully asks the Court to deny Defendant's Motion and grant Plaintiff's Cross Motion for Summary Judgment. In particular, Plaintiff seeks an order requiring Defendant to (i) produce 1,377 pages of documents it withheld under Exemptions 5 and 6, but failed to justify; (ii) produce all responsive, non-privileged documents identified in Defendant's most recent search; (iii) reimburse Plaintiff $2,908 in assessed fees; and (iv) award Plaintiff reasonable attorneys' fees, costs, and expenses.

## ARGUMENT

### A. Standards for Review

Defendant has moved to dismiss Plaintiff's FOIA request under FRCP 12(b)(6), or in the alternative, for summary judgment under FRCP 56. [SSA Motion, at 2 n.1, 8-11]. Under F.R.C.P. 12(b)(6), a federal court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In reviewing a motion to dismiss, the Court "accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the Plaintiff." *Levesque v. Vermont*, 2014 WL 4546785, at *2 (D. Vt. Sept. 12, 2014). "A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Defendant moved, in the alternative, for summary judgment under F.R.C.P. 56. Plaintiff also submits his own cross-motion for summary judgment. Under F.R.C.P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bloomer v. U.S. Dep't of Homeland*

*Sec.*, 870 F. Supp. 2d 358, 363 (D. Vt. 2012). While the movant bears the initial burden of demonstrating the absence of an issue of material fact, the "trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party, and deny the motion if the moving party fails to demonstrate his or her entitlement to judgment as a matter of law." *Dumont v. U.S. Dep't of the Air Force*, 2014 WL 12543866, at *4 (D. Vt. Mar. 5, 2014).

Where, as here, a court is faced with cross-motions for summary judgment, it "must consider each motion independent of the other, and the standard to be applied is the same as that for individual summary judgment motions." *Bloomer*, 870 F. Supp. 2d at 363 (citing *Bank of N.Y. Trust, N.A. v. Franklin Advisers, Inc.*, 674 F. Supp. 2d 458, 462-63 (S.D.N.Y. 2009)); *Dumont*, 2014 WL 12543866, at *4.

### B. The FOIA

It is well settled that the FOIA plays an important role in American democracy. As the United States Supreme Court has explained, "[t]he basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB*, 437 U.S. at 242; *Bloomer*, 870 F. Supp. 2d at 363-64. "Congress enacted FOIA 'to promote honest and open government and to assure the existence of an informed citizenry [in order] to hold the [agency decision makers] accountable." *Dumont*, 2014 WL 12543866, at *5 (citing *Nat'l Council of La Raza v. U.S. Dep't of Justice*, 411 F.3d 350, 355 (2d Cir. 2005)). The FOIA provides citizens a means to "know 'what their Government is up to.'" *NARA v. Favish*, 541 U.S. 157, 171-72 (2004) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). The Supreme Court cautioned that the FOIA should "not be dismissed as a convenient formalism," but "defines a structural necessity in a real democracy." *Id.* at

172. As the Second Circuit explained, the FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern v. FBI*, 181 F.3d 279, 286 (2d Cir. 1999).

"Under the statute, 'any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions.'" *Bloomer*, 870 F. Supp. 2d at 364 (quoting *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994)). To receive documents under a FOIA request, a requestor must reasonably describe the records sought and make the request in accordance with published rules. 5 U.S.C. § 552(a)(3)(A)-(B). In light of these important underlying considerations, the FOIA requires federal agencies to promptly release records in response to a request for production, 5 U.S.C. 552(a)(3)(A), and allows federal courts "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld." *Bloomer*, 870 F. Supp. 2d at 364 (citing 5 U.S.C. 552(a)(4)(B)).

### C. Plaintiff exhausted his administrative remedies, since Defendant failed to file a timely response to his initial request and appeal, and he submitted a perfected FOIA request, because he reasonably describes the records he seeks.

Contrary to Defendant's assertion, Plaintiff only filed this Action after exhausting his administrative remedies. [SSA Motion, at 8]. Additionally, Plaintiff reasonably described the records he seeks, and Defendant's response indicates it understood the request and knew where to search for responsive documents. As such, Defendant's Motion to Dismiss Plaintiff's complaint under 12(b)(6) or, in the alternative, summary judgment, should be denied. Instead, the Court should grant Plaintiff's cross motion for summary judgment, find that Plaintiff exhausted his administrative remedies, reasonably described the records, and is entitled to receive all non-privileged, responsive documents.

Plaintiff exhausted his administrative remedies because Defendant did not timely respond to his initial request or to his administrative appeal within the statutory timeframe, in violation of the FOIA. An agency must respond to an initial FOIA request by issuing a determination within 20 business days after receipt of the request. 5 U.S.C. § 552(a)(6)(A)(i). Similarly, an agency who receives an appeal to a FOIA determination shall make a determination with respect to any such appeal within 20 business days after receipt. 5 U.S.C. § 552(a)(6)(A)(ii). If an agency fails to comply with the statutory timeframe, a plaintiff is deemed to have exhausted his administrative remedies. 5 U.S.C. § 552(a)(6)(C); *Eakin v. U.S. Dep't of Defense*, 2017 WL 3301733, at *4 (W.D. Tx. Aug. 2, 2017) (when agency challenged scope and reasonableness of FOIA request, court found claimant-plaintiff exhausted administrative remedies where agency "failed to respond to [requester's] appeal").

Here, Defendant was late in responding to both his initial request and, more importantly for this action, his administrative appeal. Plaintiff filed his initial FOIA request on October 5, 2018. [Plaintiff's Response to Defendant's Statement of Undisputed Material Fact "SUMF"), ¶1]. Given that Defendant had 20 business days to respond, such response was due by approximately November 2, 2018. Defendant did not respond until nearly six months later when, on May 29, 2019, it informed him of the fee assessment. [SUMF, ¶ 3]. It took Defendant an additional two months to issue a decision on the request itself. [SUMF, ¶ 4]. After receiving Defendant's initial response, on August 23, 2019, Plaintiff filed a timely appeal, which gave Defendant 20 business days, or until around September 23, 2019, to issue a determination. Defendant has not yet responded to his administrative appeal, and so Plaintiff filed this action on December 20, 2019, at which point Defendant was more than three months

late in issuing a decision. [SSA Motion, at 4 (acknowledging that when Defendant filed its Motion, it was "still processing Plaintiff's appeal and had not yet issued a decision")].

Therefore, since Defendant failed to abide by the FOIA's statutorily imposed deadlines, Plaintiff has exhausted his administrative remedies. 5 U.S.C. §§ 552(a)(6)(A)(i)-(ii); *Eakin*, 2017 WL 3301733, at *4.

Notwithstanding Plaintiff's strict compliance with the FOIA's deadlines, and Defendant's disregard of the same, the SSA insists it has no duty to respond to Plaintiff's request, because he does not reasonably describe the records he seeks and thus has not perfected his request. [SSA Motion, at 8-10]. Defendant is simply wrong. In determining whether the records sought are reasonably described for FOIA purposes, the "linchpin inquiry is whether the agency is able to determine 'precisely what records (are) being requested.'" *Yeager v. DEA*, 678 F.2d 315, 326 (D.D.C. 1982). The Second Circuit, relying on the FOIA's legislative history, has found that "the FOIA defines a reasonable description of records as one that enables 'a professional employee of the agency who [is] familiar with the subject area of the request to locate the record with a reasonable amount of effort.'" *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995) (quoting H.R.Rep. No. 93-876, 93rd Cong., 2d Sess. 6 (1974), 1974 U.S.C.C.A.N. 6271)); *Roman v. CIA*, 2013 WL 210224, at *6 (E.D.N.Y. Jan. 18, 2013). Requests have been found to reasonably describe the records sought even when the search produces a significant number of files. *Yeager*, 678 F.2d at 322, 326 (holding request encompassing over 1,000,000 computerized records to be valid). Under this standard, Plaintiff reasonably described the records sought.

Defendant argues that Plaintiff's request does not reasonably describe the records because it can "neither discern the precise documents that the Plaintiff is requesting nor locate

the records Plaintiff may be seeking with a reasonable amount of effort and time." [SSA Motion, at 9]. However, Defendant's response shows the opposite. Defendant succinctly describes the request in its Motion as seeking documents in two categories: "(1) records 'pertaining to SSA assessment, evaluation, and decisions regarding inclusion or exclusion of a proposed listing for impairments due to migraine and other headache disorders in the SSA Listing of Impairments' and (2) records 'pertaining to, and/or informing, guidance as to how Listings of Impairments . . . are to be appropriately utilized and interpreted . . . in order to assess and determine medical equivalency with impairments attributed to, or caused by, migraine or other headache disorders.'" [*Id*., at 1]. For both categories of requests, the documents sought relate solely to the listings as they apply to claims of impairments arising from migraine and other headache disorders. This pithy, succinct description of Plaintiff's request reflects Defendant's clear understanding of the documents requested, and further demonstrates its reasonableness.

Defendant's search for responsive documents also indicates that the SSA knew exactly how to conduct the search. Ms. Chyn, a professional employee of the agency familiar with the subject area of the request, submits a declaration showing she knew exactly where to look for responsive documents. [SSA Motion, Ex. A]. She knew which custodians to identify, the offices in which to look, where to look, the search terms to employ, and how to search. [SSA Motion, Ex. A at ¶¶ 15, 17-22]. This undermines any doubts that SSA understood the request, and knew where and how to identify responsive documents.

Nor is Plaintiff's request as broad as Defendant would imply. For instance, Plaintiff's request is narrowly tailored to the development and application of listings to the evaluation and determination of migraine and headache disorder impairments, and not, as Defendant

suggests, "related to an agency publication that is central to SSA'S programmatic business processes related to [all] disability determinations[.]" [SSA Motion, at 9]. And, contrary to Defendant's assertion, Plaintiff does not seek all agency documents that "in any way relate to the agencies treatment of a whole category of neurological conditions." [*Id*., at 10]. A fair reading of the request shows that Plaintiff seeks only documents regarding how specific neurological listings, e.g., epilepsy, may have been applied in the evaluation of impairments exclusively arising from migraine and headache disorders.[SUMF, ¶ 1; Complaint Ex. 1].

Plaintiff's request also reasonably describes the records sought because the limited public information about the agency itself makes it impossible to fashion a more tailored request. The SSA has posted only one brief web-page, then or now, with but a glimpse of the offices or personnel that deliberate upon or decide these policies. [Shapiro Aff., ¶ 14]. The policy-making process itself is nowhere described or delineated for public assessment or scrutiny by the Defendant. [Shapiro Aff., ¶¶ 8-10]. Very limited relevant information may be gleaned from documents issued not by SSA, but by the SSA OIG (SSA OIG, The Social Security Administration's Listing of Impairments (A-01-08-18023), March 2009; SSA OIG, The Social Security Administration's Listing of Impairments (A-01-15-50022), September 2015), the GAO (GAO, Modernizing SSA Disability Programs, Preliminary Observations on Updates of Medical and Occupational Criteria (GAO-12-511T), March 2012), and the National Academy of Medicine (NAM, Improving the Social Security Disability Decision Process (2007)). [Shapiro Aff., ¶ 10]. Again, none of these documents provides insight as to why the Defendant decided not to include a migraine and headache disorders listing during the 2016 rule-making. [Shapiro Aff., ¶ 8]. That is, the Defendant has made utterly opaque to the public the disability evaluation processes relevant to the FOIA request. The point of the

9

FOIA request is to make these processes transparent to claimants and the public. Further, the Defendant cannot reasonably demand that the Plaintiff produce a detailed description of documents sought under a FOIA request, while simultaneously prohibiting the Plaintiff from acquiring virtually any information upon which to describe the documents sought in detail. [Shapiro Aff., ¶¶ 8-10, 14].

Importantly, Defendant claims for the first time in response to Plaintiff's Complaint that he has not perfected his request. [SSA Motion, at 8]. SSA responded to Plaintiff's FOIA request and did not seek clarification from Plaintiff about the scope of his request, and Defendant did not raise a concern about the scope in response to Plaintiff's administrative appeal because it did not respond. [SUMF ¶8; Complaint Ex. 1, at Ex. A]. Plaintiff first became aware that SSA did not believe Plaintiff reasonably described the records, and therefore does not have a perfected request, until after he expended the time and resources to file suit. An agency that fails to raise this issue during the administrative proceedings, only to assert it in hindsight after a requester files suit, would deprive a requester of an opportunity to cure what an agency views as an overbroad request before expending the costs and resources of filing a lawsuit.

Defendant's two principle cited cases are distinguishable. In *Roman v. C.I.A.*, 2013 WL 210224 (E.D.N.Y. Jan. 18, 2013), the agency responded to the requestor's FOIA submission by informing him that his request did not reasonably describe the records sought and that, "because of the breadth and lack of specificity of your request, and in the way in which records systems are configured, the Agency cannot conduct a reasonable search for information responsive to your request." *Id*. at *2. In response, the requester merely reiterated his request, did not file an administrative appeal, and filed a FOIA complaint with the court.

10

*Id*. at *2, *5 n.3. Here, Plaintiff was not given pre-suit notice of Defendant's position, and so filed an administrative appeal.  And in *Manfredonia v. SEC*, 2009 WL 4505510 (E.D.N.Y. Dec. 9, 2009), the requester conceded "that he did not exhaust his administrative remedies," because he did not file an administrative appeal. *Id*. at *3, *6. Further, the requester did not comply with SEC or FBI specific regulations, inapplicable here, requiring that a FOIA request describe certain information with specifics, such as the names, dates, and subject matter of documents sought.  *Id*. at *5. In contrast, here Plaintiff is not required to request documents with specificity and he learned for the first time after filing suit that Defendant viewed his request as unperfected. However, Plaintiff has reasonably described the documents he seeks and the SSA was able to identify them.

> **D. It is not unduly burdensome for Defendant to produce documents or respond to Plaintiff's request.**

Defendant argues that it need not respond to the request because it is unduly burdensome. [SSA Motion, at 11-15]. When an agency "claims that responding to a request is unreasonable, 'it bears the burden to provide a sufficient explanation as to why such a search would be unreasonably burdensome." *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 611 (S.D.N.Y. 2018) (citing *Ayuda, Inc. v. Fed. Trade Comm.*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014)). As the Department of Justice has acknowledged in its own publications, the "sheer size or burdensomeness of a FOIA request, in and of itself, does not entitle an agency to deny that request on the ground that it does not 'reasonably describe' records within the meaning of FOIA." DOJ, Procedural Requirements. FOIA Update, Vol. IV, No. 3, at 5. Other courts agree, stating that "a broad and burdensome request does not automatically render it *unreasonably* burdensome." *Eakin*, 2017 WL 3301733, at *5. Here, the sheer burdensomeness of the request should not be outcome determinative, given Defendant's responses at the

11

administrative level, the nature of the obscurity regarding the SSA, and Plaintiff's two-prong request.

Defendant did not claim Plaintiff's request was unduly burdensome in response to Plaintiff's initial request, and then did not respond to his administrative appeal. Indeed, in response to Plaintiff's initial request, Defendant produced two (albeit irrelevant) memoranda, and identified 1,377 pages of responsive documents it withheld pursuant to Exemptions 5 and 6. Defendant did not assert, nor could it, that this response would be unduly burdensome. After Plaintiff filed this action, Defendant then revisited its initial search, changed its position, and determined that its initial interpretation was "too narrow and the search performed was not reasonably calculated to obtain all records responsive to Mr. Shapiro's FOIA request." [Declaration of CT Monica Chyn ("Chyn Decl."), ¶ 12]. That is, only *after* Plaintiff filed a complaint did Defendant's search balloon from under 2,000 pages of responsive documents to more than 1.5 million pages.

It would set a dangerous precedent if the Court were to find that an agency could lawfully proceed in such a manner—initially to conduct a narrow search during the administrative process, conduct a much more expansive search when faced with a determined requester, and then, based on the more expansive search, assert it has no duty to respond based on burdensomeness. First, it would encourage agencies to conduct very narrow searches at the administrative stage, not produce all responsive documents, and then hope a requester will not expend the time and resources, including filing fees and attorneys' fees, to bring an action. Second, when faced with a dogged requester who has a reasonable basis to challenge the scope of the initial search and files a complaint, an agency could fashion a broad search, claim it is unduly burdensome, and then simply not have to respond. Under either scenario, an

agency could insulate itself from a valid request and thwart the underlying purposes of the FOIA: government accountability, open government, and an informed citizenry. *See* Section B, *supra*.

Furthermore, in the instant case fashioning a more tailored request would be unreasonably difficult, given the scarcity of information available about the SSA. [Shapiro Aff., ¶¶ 8-10, 14]. Defendant states that "Plaintiff has been given the opportunity to reform his request and describe the requests by date range, agency function, or document type, he has declined." [SSA Motion, at 10]. However, Plaintiff indicated he was willing to limit his request to the last 20 years, and to a more limited number of custodians. [Shapiro Aff., ¶14]. Regarding the custodians, and given the paucity of public information about the SSA, Plaintiff requested more information about those deemed to possess relevant information so he could make an informed decision about how to narrow the request. [*Id.*]. Defendant was unwilling to provide this information, and accordingly Plaintiff was unable to narrow the request. [*Id.*].

Lastly, Ms. Chyn's declaration does not show that responding to Plaintiff's request would be unduly burdensome. As Defendant acknowledges, Plaintiff's request is essentially two pronged, *see* Section C at 8, *supra*, yet Ms. Chyn's declaration draws no distinction between these prongs. It could very well be that responding to one of these requests is not at all burdensome. Yet, by clumping both prongs together in the same search, it is impossible to parse out whether the claimed burden applies to which part of the request.

Ms. Chyn's declaration should also be viewed with skepticism given the SSA's response to Plaintiff's request. On May 29, 2019, Ms. Chyn issued a fee notice establishing that the search and review for documents responsive to Plaintiff's request would be approximately 83 hours. [Chyn Decl., ¶¶5-6]. From that search and review, Plaintiff received

13

two irrelevant memoranda that did not contain the terms "headache" or "migraine", two of the critical terms in Plaintiff's request. [Shapiro Aff., ¶ 13]. After Plaintiff filed suit, Ms. Chyn issued a second opinion: the initial 83 hour estimate has now ballooned to a search and review that would take 193,311.6 hours. [Chyn Decl., ¶ 31]. Given that Ms. Chyn's initial search produced two irrelevant documents, and the second estimate increased by more than 2,300 times the amount of time to search for and review relevant documents, Plaintiff has no faith that the affidavit accurately represents the amount of time and effort needed to respond to Plaintiff's meritorious FOIA request. The two irrelevant documents disclosed by the Defendant constitute "*contradictory evidence in the record*" that would call into question the veracity of the estimates in Ms. Chyn's subsequent declaration. *Dumont*, 2014 WL 12543866, at *7.

Finally, it is not unduly burdensome for Defendant to produce the 1,377 pages it withheld pursuant to Exemptions 5 and 6. "When an agency withholds requested information, it must demonstrate that the information is exempt from disclosure." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000) (citing 552(a)(4)(B)). To meet this burden, an agency may submit affidavits from one of their officials, and the affidavits "must show, with reasonable specificity, why the documents fall within the exemption." *Id*. Here, Defendant has failed to meet its burden. The Chyn Declaration incorporates the arguments from the SSA's initial letter, which contain boilerplate responses, and is devoid of any specificity that the 1,377 are being withheld pursuant to the exemptions. As such, Defendant has failed to meets its burden to justify its withholding.

In sum, it is not burdensome for Defendant to produce the 1,377 documents withheld pursuant to purported privileges, as well as all other responsive, non-privileged documents.

### E. Defendant erred in denying Plaintiff a fee waiver or reduction under the FOIA.

Defendant charged Plaintiff $2,908 for responding to his FOIA request. This fee, as well as any future fees, should be waived for two reasons. First, Defendant failed to comply with the statutory timeframe. The FOIA specifies that where an agency does not comply with the applicable statutory timeframes, it shall not charge any fees to a requester "when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution." 5 U.S.C. § 552(a)(4)(A)(viii)(I). Here, Plaintiff is not seeking the documents for commercial use, and instead will use them for scholarly research and to better inform the public. [Shapiro Aff., ¶ 7]. Consequently, Defendant's failure to abide by the statutory deadlines should preclude it from assessing a fee against Plaintiff. *See* Section C, at 6-7, *supra*.

*Second*, Plaintiff seeks the information for non-commercial purposes, in furtherance of scholarly and scientific research, and the information will contribute significantly to the public understanding of SSA's operations. [Shapiro Aff., ¶ 7]. The FOIA establishes a fee schedule that contemplates waiver or reduction of fees for non-commercial requesters, and where the disclosure will benefit the public at large. "[F]ees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purposes is scholarly or scientific research[.]" 5 U.S.C. § 552(a)(4)(A)(ii)(II); *Pietrangelo, II,* 2007 WL 1874190, at *6. For such requesters, duplication fees should be waived entirely, or reduced "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. §

15

552(a)(4)(A); *Pietrangelo, II,* 2007 WL 1874190, at *6. The FOIA's fee-waiver provisions should be "liberally construed in favor of waivers for noncommercial requesters." *Id.* (quoting *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.D.Cir. 2003).

Here Plaintiff meets all the requirements of the fee-waiver provision: he seeks records for non-commercial purposes, in furtherance of scholarly research, and the information produced will increase public understanding of Defendant's process, policies, disability criteria, and determinations related to migraine and headache disorders. [Shapiro Aff., ¶ 7]. He is a medical doctor, professor, author of more than 50 publications on the topic, and founding president of a national group advocating on these issues. [Shapiro Aff., ¶¶ 3-5]. Application of the fee-waiver provision here will also further the public's understanding on the issue of migraine and headache disorders as it relates to disability determinations. It is an important topic: approximately 50 million individuals are affected by migraine in the United States, and migraine is the leading cause of disability for Americans under age 50. [Shapiro Aff., ¶ 6]. Therefore, it would be inequitable for SSA to pursue policies (e.g. not including a Blue Book listing for migraine), under regulation, that limit the ability for Americans with legitimate migraine impairment disability claims to receive the benefits earned from premiums withheld from their paychecks during their employment.

Defendant justifies charging Plaintiff fees under Section 1106(c) of the Social Security Act, 41 U.S.C. § 1306(c) and 20 C.F.R. § 402.175. [SSA Motion, at 15]. Under this provision, and notwithstanding the FOIA, Defendant may charge fees where the SSA commissioner determines a request is "made for any other purpose not directly related to the administration of the program or programs under this Act to which such information relates[.]" The "major criteria" the SSA uses to make this determination is: "(A) Is the information needed to pursue

some benefit under the Act?; (B) Is the information needed solely to verify the accuracy of information obtained in connection with a program administered under the Act; (C) Is the information needed in connection with an activity which has been authorized under the Act; (D) Is the information needed by an employer to carry out her or his taxpaying responsibilities under the Federal Insurance Contributions Act of section 218 of the Act?" 20 C.F.R. § 402.170; Chyn Decl., ¶ 7.

The Court reviews Defendant's fee-related FOIA decisions *de novo*. *Pietrangelo, II*, 2007 WL 1874190, at *6. Such a *de novo* review reveals that Defendant's determination is without merit. As a preliminary matter, Plaintiff's request is a program-related request, made for a purpose directly related to the administration of the SSA as it pertains to claimants with migraine and headache disorders. Indeed, Plaintiff seeks the records to determine how SSA applies its regulations for disability evaluations. The crux of this request is therefore directly related to SSA's "administration of the program."

Even applying the SSA's criteria, two of these factors weigh heavily in favor of charging no fee. Factor A—"whether the information is needed to pursue a benefit under the Act"—supports a fee waiver. Disclosure of the records will educate the public, informing them about how to pursue disability benefits under the Social Security Act related to migraine and headache disorders. Therefore, it is needed to pursue a benefit under the Act. Factor C—whether the information is needed in connection with an activity authorized under the Act—also weighs heavily in favor of a fee waiver. The information is needed in connection with an activity authorized under the Act: namely, how Defendant reviews, evaluates and considers disability applications for migraine and headache disorders. Based on the current, limited amount of public information in this regard, the public is left in the dark about how the

agency and its government operates an important social program. [Shapiro Aff., ¶¶ 8-10, 14]. Further, the FOIA request was filed, in part, to seek guidance for SSDI migraine claimants that was known to exist when it had been specifically cited both by SSA Acting Commissioner Colvin and in the 2016 rule-making, but had then been withheld from claimants and the public. [*Id*.].

In sum, Defendant erred in charging Plaintiff a fee, and he should be reimbursed in the amount of $2,908.

### F. Plaintiff is entitled to costs, including reasonable attorneys' fees, if he substantially prevails.

The FOIA allows courts to award represented litigants reasonable attorneys' fees and litigation costs if they have substantially prevailed. 5 U.S.C. § 552(a)(4)(E)(i). In the context of the FOIA, complainants substantially prevail when they obtain relief through either (i) a judicial order, or an enforceable written agreement or consent decree, or (ii) "a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii); *Warren v. Colvin*, 744 F.3d 841, 845 (2d Cir. 2014). If the Court sanctions any "alteration in the legal relationship of the parties," then it should award Plaintiff reasonable attorneys' fees and expenses. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001).

Here, Plaintiff filed this action only after Defendant filed a late response to his initial request, and did not respond to his administrative appeal. In so doing, the agency deprived Plaintiff of the chance to resolve (1) his FOIA request and (2) his request for refund of FOIA fees, without court intervention. If the Court enters an order that alters Defendant's position, including granting Plaintiff's motion for summary judgment, in whole or in part, or denying

Plaintiff's motion for summary judgment, in whole or in part, Plaintiff is entitled to reimbursement for costs, including reasonable attorneys' fees.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendant's Motion, grant Plaintiff's Cross Motion for Summary Judgment, and enter an order requiring Defendant to: (i) produce 1,377 pages of documents it withheld under Exemptions 5 and 6, but failed to justify; (ii) produce all responsive, non-privileged documents identified in Defendant's most recent search; (iii) reimburse Plaintiff $2,908 in assessed fees; and (iv) award Plaintiff reasonable attorneys' fees, costs, and expenses.

DATED at Middlebury, Vermont this 22nd day of September, 2020.

LANGROCK SPERRY & WOOL, LLP

Emily J. Joselson
Justin G. Sherman
PO Drawer 351, 111 S. Pleasant Street
Middlebury, VT 05753
ejoselson@langrock.com
jsherman@langrock.com
Phone:  802-864-0217

***Attorneys for Plaintiff Robert E. Shapiro***

1124944.1