**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| ROBERT E. SHAPIRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:19-cv-00238-cr |
| v. | ) | |
| | ) | |
| UNITED STATES SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY
JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S OWN MOTION TO
DISMISS OR FOR SUMMARY JUDGMENT**

Defendant, the United States Social Security Administration ("SSA"), by and through

undersigned counsel, respectfully opposes Plaintiff's Cross-Motion for Summary Judgment

(Doc. No. 17) and replies in support of its own Motion to Dismiss or for Summary Judgment

(Doc. No. 14).

**MEMORANDUM IN SUPPORT**

**INTRODUCTION**

Plaintiff sued under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for all

documents, regardless of age, pertaining to or informing certain agency decisions and guidance

related to migraines and cluster headaches.  Plaintiff alleges that SSA improperly withheld records

when issuing its initial decision on Plaintiff's FOIA request, failed to respond to his FOIA appeal,

and improperly charged him $2,908 in fees to process his request.

On July 24, 2020, SSA filed a Motion to Dismiss or, in the alternative, for Summary

Judgment and Memorandum in Support, supported by an agency declaration.  *See* ECF Doc. No.

14 ("SSA's Motion").  SSA argues that FOIA did not require SSA to respond to Plaintiff's request

because it did not comply with the requirements in the FOIA and SSA's regulations to reasonably describe the records sought, and that responding to Plaintiff's request would be unreasonably burdensome on SSA.  SSA further argues clear statutory authority, contrary to the general fee provisions of FOIA that Plaintiff cites, authorizes it to charge fees for its search and response to Plaintiff's request, even when records are not ultimately released.

On September 22, 2020, Plaintiff filed a Cross Motion for Summary Judgment and Opposition to Defendant's Motion.  *See* ECF Doc. No.17 ("Plaintiff's Opposition").  Plaintiff's Opposition makes the following assertions under the FOIA:  (1) that Plaintiff's FOIA request reasonably described the records he seeks, which Plaintiff argues is evidenced by SSA's post-appeal search efforts; (2) that it is not unduly burdensome for SSA to respond to Plaintiff's request, and that SSA must demonstrate any information withheld is exempt under FOIA from disclosure; (3) that SSA erred in not issuing Plaintiff a fee refund or waiver; and (4) that Plaintiff is entitled to fees and costs.

Plaintiff has not provided evidence sufficient to rebut the sworn statements in SSA's declaration that detail the lack of reasonable description in his request, nor has Plaintiff provided evidence to rebut the sworn statements regarding the massive burden that would be imposed on SSA if it moved forward with processing Plaintiff's request.  Given that SSA has not completed its search and processing of Plaintiff's request, it is premature to determine whether records that may be responsive to Plaintiff's request are exempt from release under 5 U.S.C. § 552(b). Plaintiff's Motion fails to explain why FOIA's general fee provisions should govern in light of SSA's clear statutory authority to charge notwithstanding FOIA and misinterprets SSA's FOIA fee regulations related to program related records requests.  Accordingly, dismissal or summary judgment is appropriate, and this court should not award fees and costs to Plaintiff.

**ARGUMENT**

### I.    Plaintiff Failed to Reasonably Describe the Records Sought and SSA's Post-Appeal Search Attempts are Not Inconsistent with Such a Finding.

Plaintiff and SSA agree that pursuant to 5 U.S.C. § 552(a)(3)(A)-(B) in order to create a duty for an agency to a respond to a FOIA request and a requestors right to receive records, "a requestor must reasonably describe the records sought and make the request in accordance with published rules." *See* Pl. Opposition at 5.  The parties also agree that standard for determining whether records sought are reasonably described for FOIA purposes is "whether the agency is able to determine 'precisely what records (are) being requested,'" *Yeager v. DEA*, 678 F.2d 315, 326 (D.D.C. 1982), and whether "a professional employee of the agency who [is] familiar with the subject area of the request [could] locate the record with a reasonable amount of effort," *Ruotolo v. Dep't of Justice*, 53 F.3d 4, 10 (2d Cir. 1995) (quoting H.R. Rep. No. 93-876, 93rd Cong., 2d Sess. 6 (1974), 1974 U.S.C.C.A.N. 6271)).  The parties only disagree as to the application of that standard to the facts.  Plaintiff argues that SSA's post-appeal attempts to search for records that may be reasonably responsive to Plaintiff's FOIA request require a conclusion that SSA knows precisely what records were requested and that SSA could locate those records with a reasonable amount of effort.  However, SSA's sworn statements about its search efforts do not support this conclusion.

SSA's sworn declaration explains the difficulty in identifying the records, the extensive efforts expended to date in attempting to do so, and the time-consuming and burdensome efforts it would entail for SSA to complete the search and processing of Plaintiff's FOIA request.  *See* SSA's Motion, Exhibit A ¶ 12-34 (describing that based on current estimates there are 1,581,644 potentially responsive pages that would require a manual review that would take an estimated 193,311.6 hours of staff time at an estimated cost in excess of $7 million).  The declaration does

not reflect that SSA is actually able to determine which records are responsive or conduct a search; rather, it reflects that SSA has merely begun to determine what effort would be involved in identifying the actual records that he is requesting or in responding to Plaintiff's request.  Plaintiff's Cross Motion and Opposition to Summary Judgment asserts that his request adequately describes the records sought due to SSA's ability to categorize his request into two broad categories, and that Ms. Chyn's declaration establishes that "she knew exactly where to look for responsive documents." *See* Pl. Opposition at 8.  However, Ms. Chyn's declaration explains that the initial estimate of where to look for *potentially* responsive documents includes at least 134 custodians located throughout almost every administrative unit of SSA.  SSA's Motion, Exhibit A ¶ 15-18.  Far from establishing that SSA knows "exactly where to look for responsive documents," it instead suggests that Plaintiff's request so poorly describes the documents that nearly *every* unit of SSA believes it is possible that they have responsive documents, whether they do or not.  Having to look almost everywhere is not knowing "exactly where to look."

Plaintiff argues that because his request relates to records about a specific topic—the Listing of Impairments relating to migraine and headache disorders—Plaintiff has reasonably described the documents requested.  Pl. Opposition at 8-9.  Yet, while Plaintiff identified a topic about which he wanted records, he asked for *all* records pertaining to the topic or informing guidance about it—of any type, at any location and office, without any time limitations.  *See* Pl. Compl., Ex. 1 (ECF Doc. 1-1) at 32.  SSA has explained the difficulty such a broad request poses in location of responsive records, and that there could be decades (potentially back to at least 1985) of records located at almost every Headquarters component at the SSA–one of the largest independent federal agencies.  *See* SSA's Motion, Ex. A ¶ 14.  Such "[b]road, sweeping requests lacking specificity are not sufficient" to reasonably describe a record sought.  *Dale v. IRS,* 238

F.Supp.2d 99, 104 (D.D.C. 2002) (*quoting Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997)) (holding that requests seeking "*all* documents concerning a requester" are too broad). Clearly if requests that seek all documents related to a single individual are too broad, a request such as Plaintiff's which seeks "all documents, regardless of age, pertaining to" broad categories that concern thousands of people, is equally over broad.

FOIA requests for "all" documents concerning a topic do not contain the reasonable description that Congress sought to preclude in its enactment of 5 U.S.C. § 552(a)(3). *See Mason v. Callaway*, 554 F.2d 129 (4th Cir. 1977) (a request seeking "all correspondence, documents, memoranda, tape recordings, notes, and any other material pertaining to the atrocities committed against plaintiffs . . . , including, but not limited to, the files of (various government offices)" was not reasonably described); *Irons v. Schuyler*, 465 F.2d 608 (D.C. Cir. 1972), cert. denied, 409 U.S. 1076 (1972) (a request for production of all unpublished manuscript decisions and available indices does not provide specificity necessary to identify records under Section 552(a)(3)); *Freedom Watch, Inc. v. Dept. of State*, 925 F. Supp. 2d 55, 61-62 (D.D.C. 2013) (finding that request seeking "all" documents or records that "refer or relate" to defined topics was overbroad and did not reasonably describe the documents requested).  This remains the case even when an agency has some idea of what responsive records the agency possesses.  *Dale*, 238 F.Supp.2d at 105 (holding that dismissal was appropriate when the request failed to reasonably describe the records by requesting "any and all documents, including but not limited to files, that refer or relate in any way to" a topic, even though the agency "determined the thrust of [the] FOIA request and what responsive records the [agency] possessed.")

The law requires that a requester reasonably describe records sought because "FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters."

*Assassination Archives & Research Ctr. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989).  This is precisely what SSA would need to do—and began to do—in order to properly process Plaintiff's FOIA request.  In an attempt to determine the scope and level of effort needed to respond, SSA began conducting a search for those records that may be ones Plaintiff sought.  Yet, because SSA could not determine precisely where records may be maintained, SSA contacted almost every single component at its Headquarters to identify possible custodians.  *See* SSA's Motion, Ex. A ¶ 15-16.  Given the breadth of request, every component contacted indicated it thought it would have potential custodians.  "When [a] request demands all agency records on a given subject then the agency is obliged to pursue any 'clear and certain' lead it cannot in good faith ignore."  *Halpern v. F.B.I.*, 181 F.3d 279, 288 (2nd Cir. 1999).

Therefore, SSA began collection and an initial email search of 134 possible custodians to try to determine the scope of what may constitute responsive records.  *See* SSA's Motion, Ex. A ¶ 18, 22-28.  Further, SSA collected and began a search of non-email records from its Office of Legislative Affairs, given their rulemaking responsibilities.  *See* SSA's Motion, Ex. A ¶ 20, 22-28. SSA has acknowledged these initial searches may not include all custodians, and further search efforts may result in added documents for review, in light of its search obligations under FOIA. *See* SSA's Motion, Ex. A ¶ 29.   Until Defendant completes its sweeping search (starting with those email and non-email records collected to date), Defendant will not be able to determine whether it has located the responsive records, and it is unclear whether those are precisely what requester sought of Defendant.  Further, given that Defendant will not know that it has–in fact–located the responsive records until it has completed its search, which Defendant estimates will take a FOIA professional a minimum of 92.62 years, a professional employee could not locate the requested records with a reasonable amount of effort.

SSA's post-appeal, good faith efforts to correct the inadequacy of its original search do not indicate that they have now precisely identified  the location of the requested records.  Instead, SSA's attempts are merely a good faith attempt to determine the location, scope, and burden in properly responding to Plaintiff's request.  As such, based on the broad language in Plaintiff's FOIA request and SSA's detailed declaration explaining its inability to precisely locate the requested records and do so in a reasonable timeframe, this Court should find that Plaintiff failed to reasonably describe the records sought as required by 5 U.S.C. § 552(a)(3) and 20 C.F.R. § 402.130.

**II.    SSA had No Duty to Respond to Plaintiff's Request, and Plaintiff Cannot Exhaust His Administrative Remedies by Appealing a Non-Perfected Request.**

Plaintiff argues that he exhausted his administrative remedies "because Defendant did not timely respond to his initial request or his administrative appeal within the statutory timeframe." Pl. Opposition at 6.  However, "an agency's 'obligation under FOIA begins only upon receipt of a valid request." *Freedom Watch*, 925 F. Supp. 2d at 60 (quoting *Dale*, 238 F. Supp. 2d at 103). When a request, such as Plaintiff's, fails to reasonably describe the records it seeks, it is not "perfected" and is invalid *ab initio.  See Freedom Watch*, 925 F. Supp. 2d at 61 (finding that the requests "failed to identify the documents sought with any modicum of specificity and were thus fatally overbroad and burdensome"); *Roman v. C.I.A.*, No. 11-CV-5944 JFB WDW, 2013 WL 210224, at *6 (E.D.N.Y. Jan. 18, 2013) (holding that where request does not comply with FOIA and agency regulations to reasonably describe the documents sought the request is not "perfected" and the agency has no duty to respond).

It is clear that, if SSA had no duty to respond to Plaintiff's request, his appeal of that failure to respond cannot cure the improper request and exhaust Plaintiff's administrative remedies.  *See Freedom Watch*, 925 F. Supp. 2d at 63 (holding that because the FOIA requests

were "infirm from the beginning" no agency had violated FOIA by failing to respond, and thus

dismissal for failure to exhaust administrative remedies was proper).  Therefore, because

Plaintiff's request did not reasonably describe the documents it sought, SSA's failure to timely

respond is immaterial as to whether Plaintiff exhausted his administrative remedies, and his

claim should be dismissed.

**III.     Plaintiff's Request is Unduly Burdensome, and Plaintiff has Provided No Evidence
to Contradict or Otherwise Overcome the Presumption of Good Faith Afforded to
SSA's Sworn Statements Detailing the Burden on SSA in Processing Plaintiff's
Request.**

Plaintiff attempts to question SSA's post-appeal search efforts and the veracity of the

burden estimates detailed by SSA in its sworn declaration, but he fails point to evidence sufficient

to call the agency's good faith statements into doubt.  Plaintiff suggests that SSA's actions should

be viewed with "skepticism" given the difference between the agency's initial FOIA response and

its later search efforts.  Yet, SSA was forthcoming in acknowledging its error in its original

interpretation of Plaintiff's improper request that did not reasonably describe the records sought.[1]

Once the misinterpretation identified, SSA has expended extensive, good faith efforts to remedy

the misinterpretation and confirm its conclusion that the request is overly broad and burdensome

to process.

Specifically, Plaintiff argues that the two documents released in SSA's initial response (*see*

Pl. Compl., Ex. 1 at  37-45) constitute contrary evidence that should call into question the "veracity

of the estimates" in SSA's declaration detailing its later post-appeal search.  *See* Pl. Opposition at

13.  Plaintiff argues that these two records were not responsive to Plaintiff's request because, while

---

[1] That SSA initially misinterpreted Plaintiff's request is in itself evidence that supports its argument that the request
failed to reasonably describe the records sought such that a professional employee of the agency, familiar with the
subject area of the request, could locate the record with a reasonable amount of effort.

they related to neurological listings and the agency's regulatory plans, they were not specific to migraine or headache.[2]  *See* Pl. Opposition at 14.  However, SSA conducted its subsequent search in a manner that would clearly remedy Plaintiff's concern—and these two records would not have been included in SSA's estimated page count of potentially responsive records.  In SSA's subsequent search efforts, it compiled all newly located records *together with* any potentially responsive records identified in SSA's initial searches.  *See* SSA's Motion, Ex. A ¶ 22.  Then, *after compilation*, SSA searched all the records on the search terms "headache" and "migraine," which located the 1,581,644 pages that SSA concluded would require further manual search.  *See* SSA's Motion, Ex. A ¶ 25, 27.  Because the two documents initially released did not contain the term "headache" or "migraine," SSA's 1,581,644 page count does not include these records.

Plaintiff also argues that it is not unduly burdensome for SSA to produce the 1,377 pages that SSA originally identified and withheld with its initial FOIA response, but SSA and Plaintiff agree that SSA's initial search was not an adequate search under the FOIA.  The issues that have since been identified with the initial search mean that the documents it identified may not be responsive to Plaintiff's request.  Upon this realization, SSA began a new search and, as explained above, included the documents from its initial search in its records compilation that SSA then searched on relevant search terms.  *See* SSA's Motion, Ex. A ¶ 15-28.  Therefore, any documents from the 1,377 pages that included the search terms would have also been included in the 1,581,644-page count and would have just as much as a likelihood as being possibly responsive—

---

[2] SSA's initial inclusion of these two records in those identified as responsive was clearly a result of the following sentence in Plaintiff's FOIA request: "These documents should relate to, but not be limited to, the 2013 to 2016 process of SSA rules-making, ANPRM, NPRM and final rules-making/or revision of Medical Criteria for Evaluating Neurological Disorders listings (11.00 Neurological -Adult)."  Plaintiff's FOIA appeal and Complaint clarified Plaintiff's view that these records were not responsive (ECF 1-1 p. 5); therefore, Defendant tailored its post-appeal search terms accordingly (ECF 14-1 ¶ 25-26).

and possibly exempt from release—as the remaining 1,581,644.  Consequently, it is improper to consider solely the burden of re-processing the 1,377 records, which would not accurately reflect the burden of a proper FOIA response.  Moreover, in light of SSA's new and uncompleted search, it is also premature for SSA to specify what documents are exempt under 5 U.S.C. § 552(b).

Finally, Plaintiff speculates that SSA could process his request in two separate "prongs," which he speculates could have different level of burdens, and argues that SSA should have conducted its burden analysis to parse out the burden related to each prong.  *See* Pl. Opposition at 13.  However, Plaintiff cannot dispute that he submitted a single request that contains both prongs, and he has not offered to narrow his request.  The only relevant calculation is what would be the burden to SSA to locate responsive documents to the request actually submitted.  Plaintiff has not offered any support that the search related to his submitted request could be conducted at a lower burden than estimated by SSA, and cannot rebut the good faith presumption afforded to SSA's sworn declaration with such purely speculative claims.  *Robert v Central Intelligence Agency*, 779 Fed. Appx. 58 (2nd Cir. 2019) (agency "declarations 'are accorded a presumption of good faith' and 'cannot be rebutted by purely speculative claims' or bare assertions"); *see also Sheridan v. Dep't of Navy*, 9 Fed. Appx. 55, 57 (2nd Cir. 2001); *Ground Saucer Watch, Inc. v C.I.A,* 692 F.2d 770, 771 (D.C. Cir. 1981).  Plaintiff argues that "by clumping both prongs together in the same search, it is impossible to parse out whether the claimed burden applies to which part of the request."  Pl. Opposition at 13.  Plaintiff's argument fails to acknowledge that it was his request that "clump[ed] both prongs together" in a single overbroad request that would be extremely burdensome regardless of whether it was split into separate prongs.

Plaintiff's "prongs" are very similarly worded, both requesting all documents—regardless of age, type, or custodian—pertaining or relating to SSA's Listing of Impairments as they relate

to migraine and headache.  Plaintiff's Motion acknowledges these similarities in explaining that, "[f]or both categories of requests, the documents sought relate solely to the listings as they apply to claims of impairments arising from migraine and other headache disorders."  *See* Pl. Opposition at 8.  SSA's declaration states that it cannot precisely locate these records and that doing so is time consuming, in light of the lack of specified limitations in time, record type, and custodian and the breath of the subject area.  *See* SSA's Motion, Ex. A ¶ 14, 29.  The lack of such limitations and specificity are present in both subparts of Plaintiff's records request.  Further, the same search terms ("migraine" and "headache") would clearly apply to searches for both parts of Plaintiff's request, and SSA has stated that it has not identified additional search parameters.  *See* SSA's Motion, Ex. A ¶ 28.

Because Plaintiff has failed to provide evidence to overcome the presumption of good faith afforded to SSA's declaration, this Court should rely on the extensive burden estimates detailed in SSA's declaration and conclude Plaintiff's request is unreasonably burdensome for SSA to process.

**IV.**      **SSA Did Not Err in Charging of Fee in Response to Plaintiff's Request.**

Without explanation of its inapplicability, Plaintiff continues to argue that SSA should have waived the fee charged to Plaintiff because of FOIA's fee provisions–specifically, 5 U.S.C. § 552(a)(4)(A)(viii)(I).  This argument continues to ignore SSA's clear statutory authority under 42 U.S.C. § 1306(c) to charge fees in its response to records requests, *notwithstanding FOIA*.  The FOIA's fee provisions are clearly inapplicable to Plaintiff's request for SSA records.

To the extent Plaintiff does acknowledge SSA's authority, he now argues that Plaintiff's request is a program-related request, made for a purpose "directly related to the administration of" a program under the Social Security Act, as required by 42 U.S.C. § 1306(c) and 20 C.F.R. §

402.170.  *See* Pl. Opposition at p. 16-17.  Plaintiff argues that this is because "Plaintiff seeks the records to determine how SSA applies its regulations," *see* Pl. Opposition at 1,7 but this request is clearly one personal to Plaintiff, who has no responsibility for administration of a program under the Social Security Act.

SSA's regulation relating to program requests, 20 C.F.R. § 402.170, provides insight into the type of direct relation necessary for requests to be considered "directly related to the administration of" a program under the Social Security Act as required in 42 U.S.C. § 1306(c). One example being when information is necessary to pursue a benefit under the Act.  20 C.F.R. § 402.170(a)(2)(i).  Here, Plaintiff has made clear that his interest is for "his own scholarly research." *See* Pl. Opposition at 2.  Even if this research is about or related to Social Security programs and may eventually be made publicly available, such research is not funded or sponsored by SSA or otherwise directly related to the administration of a program under the Social Security Act.

Given the Social Security Act and SSA's regulations do not expressly define what constitutes "administration" for the purpose of fee determinations under 42 U.S.C. § 1306(c),[3] the ordinary meaning should be given to this term.  *See Mohamad v. Palestinian Authority*, 566 U.S. 449, 454 (2012) (holding that when a statute does not define a term, courts should look first to the word's ordinary meaning).  The ordinary meaning of "administration" is tied to management and executive responsibilities.  *See* Black's Law Dictionary (11th ed. 2019) (defining administration as, "[t]he management or performance of the executive duties of a government, institution, or business; collectively, all the actions that are involved in managing the work of an organization"); Merriam-Webster.com  Dictionary,  https://www.merriam-webster.com/dictionary/administration

---

[3] 42 U.S.C. § 1301(a)(10) only defines the term "Administration"–with a capital "A," which is defined to mean, "the Social Security Administration, except where the context requires otherwise."  20 C.F.R. § 402.30 does not define the term.

(accessed Oct. 6, 2020) (defining administration as "performance of executive duties").  Plaintiff's request has no direct relationship to the management or performance of executive duties of the Government in its administration of the Social Security Act, but is generally seeking information related to policy decisions and applications to a group of disorders.  Further, SSA should be afforded deference in its interpretation of its own regulations. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., et al.*, 467 U.S. 837, 843 (1984).

Moreover, to the extent Plaintiff argues that he should be entitled to waiver or reduction of the fee charged under SSA's regulations, such requests must be filed "at the same time [the requester] make[s] [his/her] request for records."  20 C.F.R. § 402.185(e).  Plaintiff did not request a waiver of SSA's May 29, 2019 fee decision until he filed his August 23, 2019 FOIA appeal, which was almost a year after he had made his October 5, 2018 FOIA request.  *See* Pl. Compl., Ex. 1.  Plaintiff's request amounts to a demand for "refund" (Pl. Compl., Ex. 1 at 1) to which he has no entitlement under 42 U.S.C. § 1306(c) or SSA's regulations in 20 C.F.R. Part 402.

## V.     Plaintiff is Not Entitled to Costs.

For the reasons set forth in SSA's Motion, Plaintiff is not entitled to fees and costs.  *See* SSA's Motion at 16.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court dismiss or grant summary judgment in favor of Defendant in the above-captioned case.

Dated at Burlington, Vermont this 13th day of October, 2020.

UNITED STATES SOCIAL SECURITY
ADMINISTRATION,

CHRISTINA E. NOLAN
United States Attorney


/s/      Jason M. Turner
By:     Jason Turner
Assistant U.S. Attorney
United States Attorney's Office
11 Elmwood Avenue, 3rd Floor
Burlington, Vermont 05401
(802) 951-6725
Jason.Turner4@usdoj.gov