UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| ROBERT E. SHAPIRO,<br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES SOCIAL SECURITY<br>ADMINISTRATION,<br>　　　　　　Defendant. | Docket No. 2:19-cv-000238 |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT**

NOW COMES the plaintiff, Dr. Robert E. Shapiro ("Plaintiff"), and through his undersigned counsel submits the following Reply in Further Support of Cross Motion for Summary Judgment. Plaintiff requests that the Court grant his Motion in its entirety.

**INTRODUCTION**

After Defendant ignored the FOIA's statutorily imposed deadlines and failed to respond to his administrative appeal, Plaintiff sued under the FOIA to obtain information from Defendant regarding (1) records pertaining to SSA assessment, evaluation, and decisions regarding inclusion or exclusion of a proposed listing for impairments due to migraine and other headache disorders in the SSA Listing of Impairments, (2) records pertaining to, and/or informing, guidance as to how Listings of Impairments . . . are to be appropriately utilized and interpreted . . . in order to assess and determine medical equivalency with impairments attributed to, or caused by, migraine or other headache disorders, and (3) reimbursement of FOIA fees and reasonable attorney's fees. This information would both further his scholarly research, and increase public understanding about how SSA evaluates these disorders that

1

affect nearly 50 million Americans. Further, this information is not being sought by the Plaintiff for any commercial interest. This scenario is precisely the type that supports the FOIA's underlying purpose and weighs in favor of compelling production: keeping citizens informed about their government, holding governors accountable to the denizens, and checking corruption.

Despite its repeated failures to abide by the FOIA and its deadlines, Defendant refuses to produce responsive documents. In support of its position, Defendant claims Plaintiff did not exhaust his administrative remedies or reasonably describe the records, and that it is unreasonably burdensome for it to respond. It is Defendant's burden to justify its withholding of documents, and it has failed to meet that burden here. Contrary to Defendant's contention, Plaintiff exhausted his administrative remedies and reasonably described the records he seeks. Ms. Chyn's declaration does not establish the burdensomeness of replying, such that Defendant should be excused from doing so.

Defendant should reimburse Plaintiff the $2,908 in fees for producing two irrelevant documents in response to his initial request, which production was based on a search Defendant now claims misunderstood Plaintiff's request; further, Defendant should also reimburse Plaintiff's reasonable attorney's fees. The law does not support Defendant's position, because by violating the FOIA's timeframe, Defendant must waive the past and future fees.

# ARGUMENT

### A. Defendant should be required to produce documents in response to Plaintiff's FOIA request because Plaintiff exhausted his administrative remedies and reasonably described the records he seeks.

Defendant asserts various reasons why it should not be required to produce documents in response to Plaintiff's FOIA request. First, Defendant claims that Plaintiff did not exhaust his administrative remedies. In reaching this conclusion, Defendant ignores that it failed repeatedly to comply with the FOIA's statutorily imposed deadlines. In so doing, Defendant itself caused Plaintiff to constructively exhaust his administrative remedies.

Plaintiffs are deemed to have exhausted their administrative remedies under the FOIA if they timely appeal an agency determination, and the agency fails to respond within the statutorily imposed deadlines. [Doc. 17, Plaintiff's Cross Motion for Summary Judgment, And Opposition to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Pl. Cross Mot."), at 5-6]. Here, Plaintiff exhausted his administrative remedies after Defendant failed to timely respond to his administrative appeal. Defendant's failure to even respond to Plaintiff's appeal was the most recent of its several FOIA violations. Defendant was nearly 275 days late in responding to his initial FOIA request, and it never responded to his appeal despite the requirement to do so within 20 business days. [*Id*., 6 (citing 5 U.S.C. § 552(a)(6)(A)(i); *Eakin v. U.S. Dep't of Defense*, 2017 WL 3301733, at *4 (W.D. Tx. Aug. 2, 2017)]. Since Defendant did not timely respond to Plaintiff's FOIA appeal, and is yet to respond, Plaintiff exhausted his administrative remedies.

An agency's refusal to comply with the statutorily imposed deadlines is no small matter. Congress passed the OPEN Government Act of 2007, which amended certain sections of the FOIA, including the statutory time requirements in Section 552(a)(6)(A). *Bensman v.*

*National Park Service*, 806 F. Supp. 2d 31, 37 (D.D.C. 2011). The *Bensman* Court explained the purpose behind the Act's passage:

> The legislative history of the 2007 Amendments evinces a strong desire by Congress to curb agencies' delays in processing FOIA requests. *See* S.Rep. No. 110–59, 110th Cong., 1st Sess. (Apr. 30, 2007). The Senate report explains that the 2007 Amendments "address [ ] the growing backlog of FOIA requests and *restore[ ] meaningful deadlines* for agency action, by ensuring that the 20–day statutory clock runs immediately upon an agency's receipt of a request and *by imposing consequences* on federal agencies for missing the deadline." *Id.* at 3 (emphasis added). Indeed, "the major delays encountered by FOIA requestors" were "[c]hief among the problems with FOIA" that Congress sought to remedy by passing the 2007 Amendments. *Id.* (noting also that "the oldest outstanding FOIA requests date back to 1989—before the collapse of the Soviet Union").

*Id.*, at 37-38. To ensure a meaningful enforcement mechanism, Congress imposed "consequences on agencies that . . . fail to comport with FOIA's requirements," including a provision stating that "an agency shall not assess search fees if the agency fails to comply with any time limit" of the FOIA. *Id.* at 38.

Here, Defendant repeatedly ignored the plain terms of the deadlines set forth in the FOIA. Allowing it to defeat this action with a defense that Plaintiff didn't exhaust his administrative remedies would violate the plain terms of the FOIA and run counter to the provisions of the OPEN Government Act, and its intent to increase consequences for an agency's failure to respond in a timely fashion: precisely what Defendant did here.

To get around its failure to comply with the applicable deadlines, Defendant now contends Plaintiff did not exhaust his administrative remedies, because his request did not reasonably describe the records sought, or was invalid *ab initio*, and thus Defendant never needed to respond at all. [Doc. 20, Defendant's Opposition to Plaintiff's Cross Motion for Summary Judgment and Reply in Support of Defendant's Own Motion to Dismiss or for Summary Judgment ("Def. Opp."), at 7]. Defendant takes this position for the first time in this

lawsuit, deviating from its prior positions taken at the administrative level. Before filing this lawsuit, Defendant had four opportunities to notify Plaintiff that his request was overly broad or unduly burdensome. It could have done so after Plaintiff submitted his request on October 5, 2018. It did not. It could have informed Plaintiff that his FOIA request was overbroad when it sent him a fee notification on May 30, 2019. It did not. It could have informed Plaintiff that his request was overly broad and unduly burdensome when it produced two irrelevant documents on July 27, 2019. It did not. And lastly, it could have informed him that his request was overly broad when Plaintiff appealed. It did not, and indeed failed to respond at all.

Only after Plaintiff filed this lawsuit, more than two years after he submitted his initial request, did Defendant claim his request was unduly burdensome. If Defendant determined that his request was unduly broad, it failed to do so at all the junctures cited above.  And if it had no duty to respond, then it should have made that clear from the outset. Instead, it misled Plaintiff by failing to raise the objections on the four separate occasions it communicated with Plaintiff, or was required by FOIA to communicate with Plaintiff, before filing suit. Further, once Plaintiff filed suit and then, in good faith, offered to narrow his request, Defendant terminated negotiations. By such conduct it would appear that 'perfecting' the request was never Defendant's intent; rather, Defendant's efforts appear to have been to deny disclosure to Plaintiff of any and all relevant documents under a FOIA request that was valid *ab initio*, and thereby thwart FOIA-authorized oversight of the Social Security Administration.

In the FOIA context, courts have chastised agencies, previously and conspicuously including the Defendant, for moving the goalposts during litigation. *Clifford v. Colvin*, 2015 WL 4627312 (D. Me. Aug. 3, 2015) (in FOIA case, criticizing government for changed exemption that formed basis for withholding documents where "nature of [p]laintiff's request

5

did not change," and there was no evidence "to suggest that the bases for the new exemptions were not available to Defendant at the time of its initial response to [p]laintiff's request").

The primary case Defendant cites in support of its position does not warrant a different outcome. *Freedom Watch, Inc. v. Dept. of State*, 925 F. Supp. 2d 55, 57-58 (D.D.C. 2013). There the actions of the requesting plaintiff and the responding agencies are both distinguishable. Unlike here, in *Freedom Watch* the requester sought records from five different agencies and fell short of exhausting his administrative remedies because he did not file any administrative appeals. Instead, the plaintiff rushed into court and filed suit against all five agencies, "just over a month after it submitted its FOIA requests." *Id*. at 59. Additionally, three of the responding agencies indicated that the requests were overbroad. *Id*. at 58.

Defendant next contends that Plaintiff did not reasonably describe the records sought, that Ms. Chyn did not know where to look, and that it had to look "almost everywhere" for potentially responsive documents. [Def. Opp., 4]. Ms. Chyn's declaration, however, fails to so state. Instead, Ms. Chyn's declaration, totaling 13 pages, details where she searched, how she searched, the terms employed, and the places she searched, and rejects any assertion that she didn't know where to look. [Pl. Cross Mot., 13-14].

Nor does the fact that Ms. Chyn's search revealed a significant number of documents itself invalidate Plaintiff's request. [*Id*., 11]. In many ways, it is unsurprising that Defendant's search uncovered a significant number of documents. After all, Plaintiff's request involves migraine and headache disorders that affect 50 million Americans, or nearly 15% of the population. Additionally, Plaintiff would be hard pressed to narrow his request, given the

6

limited publicly available information on the administration of the program.[1] Plaintiff should not be refused his FOIA request as overly broad, when Defendant itself has made limited public disclosures and operates in relative obscurity.

Defendant next asserts that Plaintiff's request does not reasonably describe the records sought, because he requests "all" documents in two categories for migraine and headache disorders. [Def. Opp., 4-5]. However, the fact that a request seeks "all records" does not render it unreasonably broad. The cases Defendant cites do not show otherwise. *Dale v. I.R.S.*, 238 F. Supp. 2d 99, 104-05 (D.D.C. 2002) (not reasonable request where deviated from agency regulations and requester refused to narrow after government reviewed initial request); *Mason v. Callaway*, 554 F.2d 129, 131 (4th Cir. 1977) (request seeking "all" documents "pertaining to the atrocities committed against plaintiffs" unreasonably broad, especially where government produced "large number of documents" pursuant to request); *Irons v. Schuyler*, 465 F.2d 608, 613 (D.D.C. 1972) (reviewing request for all unpublished manuscript decisions "in the context" of the particular agency and that particular case); *Freedom Watch, Inc. v. Dept. of State*, 925 F. Supp. 2d 55, 61 (D.D.C. 2013) (requesting seeking 63 categories of documents from five agencies, some of which included requests for all documents, "subject to criticism" but not automatically invalid). In fact, courts have found that requests reasonably describe records where they include language seeking all records. *See, e.g., Eakin v. United States Department of Defense*, 2017 WL 3301733, at *1 (W.D. Tex. Aug. 2, 2017) (request not unreasonably broad where sought "All contracts…").

It would set a dangerous precedent were this Court to find that a FOIA request could be deemed unreasonably broad simply because it requests "all" documents, records, or

---

[1] The number of potentially responsive documents is also a function of the agency's size. As Defendant acknowledges, it is "one of the largest independent federal agencies." [Def. Opp., 4].

7

information. Were this allowed, an agency could dismiss many valid FOIA requests often drafted by pro se litigants, if they included a request with the term "all." Such a bright line rule defeats the purposes of the FOIA: the right of citizens to be informed about their government, the need to hold governors accountable to the governed, and to provide a check on potential corruption. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

### B. It is not unduly burdensome for Defendant to produce documents in response to Plaintiff's request.

Defendant bears the burden of establishing that it should not be required to produce documents in response to Plaintiff's FOIA because it is unduly burdensome. [Pl. Cross Mot., 11 (citing *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 611 (S.D.N.Y. 2018) (citing *Ayuda, Inc. v. Fed. Trade Comm.*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014))]. Notably, Defendant is not relieved of its FOIA obligations to produce documents simply because of the size of potentially responsive documents. [*Id*.].

Contrary to Defendant's assertion, it has failed to satisfy its burden here. In support of its unduly burdensome argument, Defendant relies on the Declaration of Ms. Chyn. Although Defendant acknowledged in its opening memorandum that Plaintiff's request has two distinct prongs, Ms. Chyn's declaration does not indicate the burdens of responding to each prong. As such, Ms. Chyn's declaration does not satisfy Defendant's burden to show it would be unduly burdensome to respond to any aspect of Plaintiff's request.

Defendant asserts that Plaintiff submitted his two-pronged request as part of a "single overbroad request that would be extremely burdensome regardless of whether it was split into separate prongs." [Def. Opp., 10]. However, there is simply no evidence in Ms. Chyn's declaration on this point, further failing to support Defendant's burden.

### C. SSA erred in charging Plaintiff a fee for responding to his request.

FOIA establishes a clear mandate that an agency shall not charge any fees when it violates the applicable statutory timeframe, a requester seeks records not for commercial use, and the request is made by an educational or noncommercial scientific institution. [Pl. Cross Mot., 15]. As referenced above, the OPEN Government Act of 2007 amended the FOIA to impose consequences for an agency's failure to comply with its FOIA obligations, including that "an agency shall not assess search fees . . . if the agency fails to comply with *any time limit*." *Bensman*, 806 F. Supp. 2d at 38 (emphasis in original).

Nevertheless, Defendant contends it did not err in charging Plaintiff a $2,908 fee for responding to his initial request. [Def. Opp., 11-12]. In particular, Defendant claims it has the ability to ignore this 2007 amendment to the FOIA, and to assess fees under 42 U.S.C. § 1306(c) and its own regulations, 20 C.F.R. §402.170. These apparently conflicting statutes—the 2007 amendment to FOIA mandating a fee waiver, and 42 U.S.C. § 1306(c)—should be resolved in Plaintiff's favor, because FOIA'S fee-waiver provision was enacted later in time than Defendant's cited authorities.

Defendant cites to Section 1306 and 20 C.F.R. § 402.170, last amended in 1994 and 2000, respectively. These authorities were in effect *before* the enactment of the OPEN Government Act of 2007, which strengthened provisions of the FOIA, including the fee waiver described above. Given these apparently conflicting authorities, the later enacted law—the FOIA's fee waiver provision—should prevail over the earlier-enacted authorities. *In re Ionosphere Clubs, Inc.,* 922 F.2d 984 (2d Cir. 1990) ("when two statutes are in irreconcilable conflict, we must give effect to the most recently enacted statute since it is the most recent indication of congressional intent") (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976)).

Accordingly, the $2,908 fee, and any future assessed fees, should be waived. [Pl. Cross Mot., 16-17].

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in Plaintiff's Cross Motion for Summary Judgment, Plaintiff requests that the Court grant his motion in its entirety.

DATED at Burlington, Vermont this 27th day of October, 2020.

    LANGROCK SPERRY & WOOL, LLP

    */s/ Justin Sherman*

---

Justin G. Sherman
Emily J. Joselson
PO Drawer 351, 111 S. Pleasant Street
Middlebury, VT 05753
jsherman@langrock.com
ejoselson@langrock.com
Phone:  802-864-0217

***Attorneys for Plaintiff Robert E. Shapiro***

1140720.1