UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 MAR -8 PM 3:16

BY_____
DEPUTY CLERK

ROBERT E. SHAPIRO,                    )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )        Case No. 2:19-cv-000238
                                      )
UNITED STATES SOCIAL SECURITY         )
ADMINISTRATION,                       )
                                      )
        Defendant.                    )

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT AND
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT**
(Docs. 14 & 16)

Plaintiff Robert E. Shapiro brings this suit pursuant to the Freedom of Information Act ("FOIA") against the United States Social Security Administration ("Defendant"), arising from its alleged failure to adequately respond to his FOIA request. Pending before the court are the parties' cross-motions for summary judgment.

**I.    Procedural Background.**

Plaintiff alleges three causes of action against Defendant: (1) failure to respond to his FOIA request within the statutory timeframe (Count I); (2) failure to produce responsive records (Count II); and (3) improper denial or failure to respond to his request for a fee waiver or reduction (Count III). Plaintiff seeks declaratory and injunctive relief in addition to compensatory damages and an award of attorney's fees and costs.

On July 24, 2020, Defendant filed a motion to dismiss for failure to state a claim or, in the alternative, for summary judgment arguing that Plaintiff failed to exhaust his administrative remedies and thus dismissal of his claims is warranted. In the event Defendant does not prevail on this argument, it asserts that it is entitled to judgment as a matter of law in its favor because Plaintiff's FOIA request was unreasonably broad and

burdensome and its $2,908.00 fee was appropriate.

On September 22, 2020, Plaintiff cross-moved for summary judgment on the same issues and opposed Defendant's motion. On November 3, 2020, the parties completed their briefing, at which point the court took the pending motions under advisement.

Plaintiff is represented by Emily J. Joselson, Esq. and Justin G. Sherman, Esq. Assistant United States Attorney Jason M. Turner represents Defendant.

## II.  The Undisputed Facts.

Plaintiff is a medical doctor and a professor of neurological sciences at the Larner College of Medicine at the University of Vermont. In addition to teaching and conducting research, he treats patients for migraine and other headache disorders as well as neurological disorders. He is a member of the American Board of Psychiatry and Neurology specializing in neurology and is certified in the field of Headache Medicine by the United Council for Neurological Subspecialties. He is the founding president of the Alliance for Headache Disorders Advocacy, a national organization that advocates on behalf of the interests of persons with disabling headache disorders. He is the author of peer-reviewed articles and scholarly research on migraine disability, headache disorders, and other neurological disorders.

On October 5, 2018, Plaintiff filed an electronic FOIA request, which states as follows:

> I seek all documents, regardless of age, pertaining to [Social Security Administration] assessment, evaluation, and decisions regarding inclusion or exclusion of a proposed listing for impairments due to migraine and other headache disorders in the [Social Security Administration] Listing of Impairments (Blue Book). These documents should relate to, but not be limited to, the 2013 to 2016 process of [Social Security Administration] rules-making, ANPRM, NPRM and final rules-making/or revision of Medical Criteria for Evaluating Neurological Disorders listings (11.00 Neurological – Adult). These documents should include, but [not] be [ ] limited to, all relevant correspondence, emails, memoranda, drafts, cost-benefit analyses, public comments, and related guidance documents, including those documents from and between all relevant [Social Security Administration] offices (i.e., Office of Regulations and Reports Clearance, Office of Disability Policy, Office of General Counsel, Offices of the Chief

2

Actuary and Budget, etc.), as well as those document from and between [Social Security Administration] offices and offices of other Federal Government agencies. I also seek all documents (i.e. from [Social Security Administration] Office of Disability and Policy or other [Social Security Administration] offices), regardless of age, pertaining to, and/or informing, guidance as to how Listings of Impairments (e.g. 11. 02 Epilepsy) are to be appropriately utilized and interpreted (i.e. by [Social Security Administration] adjudicators and administrative law judges) in order to assess and determine medical equivalency and impairments attributed to, or caused by, migraine or other headache disorders, such as cluster headache.

(Doc. 15 at 1-2.)

Defendant received Plaintiff's FOIA request and assigned it tracking number SSA-2019-000087. On May 29, 2019, Defendant issued Plaintiff a fee of $2,908.00 in response to his FOIA request pursuant to 42 U.S.C. § 1306(c) and 20 C.F.R. § 402.175. On or about June 5, 2019, Plaintiff agreed to pay the fee.

On July 26, 2019, Defendant issued an initial decision on Plaintiff's FOIA request and released two memoranda. It stated that it was withholding 1,377 responsive pages under FOIA Exemptions 5 and 6. Based on Plaintiff's review of the two memoranda, he determined they were irrelevant to his request as neither contained the terms "headache" or "migraine" and they did not pertain to the assessment of Social Security Disability Insurance (SSDI) or Social Security Insurance (SSI) claimants' impairments for migraine or headache disorders under the Listing of Impairments.

On or about August 23, 2019, Plaintiff appealed Defendant's initial decision "due to withholding of responsive documents and the fee assessed by the agency."[1] *Id.* at 3. In addition, Plaintiff appealed the withholding of other relevant documents that may not

---

[1] With regard to the withholding of documents, Plaintiff's appeal states:

Specifically, I appeal the withholding by [Defendant] of 1,377 page(s) of response documents cited in . . . [Defendant's] response letter[.]

. . .

I hereby appeal the fee that [Defendant] assessed for fulfilling the FOIA request and I demand its refund.

(Doc. 1-1 at 1.)

have been included in Defendant's response.[2] Plaintiff's appeal, set forth in a twenty-four-page letter, explains his grounds for appeal and the reasons why he believes there are additional non-exempt records responsive to his FOIA request. Defendant received Plaintiff's appeal and assigned it tracking number SSA-2019-003518.

On December 20, 2019, Plaintiff filed a Complaint with the United States District Court for the District of Vermont, although Defendant had not yet issued a decision on Plaintiff's appeal. Upon review of Plaintiff's administrative appeal, Defendant concluded that its initial interpretation of Plaintiff's FOIA request was too narrow and its initial search was not reasonably calculated to obtain all responsive records. Upon further review and searches, Defendant determined that Plaintiff's FOIA request was unreasonably broad and burdensome based on the lack of limitations on the time frame at issue, type of records sought, agency offices to be searched, and relevant subject matter.

C.T. Monica Chyn details the results of Defendant's second search in her declaration (the "Chyn Declaration") attached to Defendant's motion. She avers the second search for responsive documents involved Defendant conducting an electronically stored information search of 134 potential custodians of responsive documents, contacting "almost every . . . Headquarters office[,]" and searching its e-discovery system. (Doc. 15 at 4.) Defendant used the search terms "headache," "migraine," and "neurological" or "neuro" and sampled documents from those searches. Based on the results, it concluded that the terms "headache" or "migraine" were likely to be responsive while documents using the terms "neurological" or "neuro" were not.

The second search identified 1,581,644 responsive pages that would require line-by-line review due to the nature of the documents requested and the likelihood that they would be subject to the deliberative process exemption. Defendant estimates that review would take 193,311 hours and cost $7,293,140.00. Defendant further claims that

---

[2] Plaintiff described these additional records as follows: "I also appeal the withholding by [Defendant] of any further relevant documents responsive to the FOIA request which [Defendant] may not have included within the 1,377 page(s) of response documents cited in the response letter." (Doc. 1-1 at 1.)

processing Plaintiff's FOIA request would severely interfere with its ability to complete its FOIA workload, including mandatory FOIA reports, meeting proactive disclosure requirements, responding to congressional inquiries, satisfying information requests under other statutes, and assisting members of the public with obtaining information requests directly related to their Social Security benefits.

## III.   The Disputed Facts.

Plaintiff filed a Statement of Disputed Facts in which he challenges the accuracy of Defendant's estimates of the burden imposed by his FOIA request in light of the irrelevance of the memoranda produced. On that same basis, Plaintiff challenges Defendant's conclusion that processing his FOIA request would severely interfere with Defendant's FOIA workload.[3]

## IV.   Conclusions of Law and Analysis.

### A.   Standards of Review.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[ ] [his] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010)

---

[3] Both these arguments as well as Plaintiff's arguments as to why public policy and other reasons favor the granting of his request do not create genuine issues of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); *Timsina v. United States*, 2019 WL 3254689, at *2 (D. Vt. July 19, 2019), *aff'd*, 835 F. App'x 633 (2d Cir. 2020) ("To the extent Plaintiffs' responses to Defendant's statement of undisputed material facts are more properly characterized as legal arguments, they will be disregarded because a legal argument cannot create a disputed fact under Fed. R. Civ. P. 56.").

(internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

The court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the non-moving party" and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (citations omitted).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. If the evidence "presents a sufficient disagreement to require submission to a jury[,]" the court must deny summary judgment. *Id.* at 251-52.

"The function of the district court in considering the motion for summary

judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

"Where, as here, there are cross-motions for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

## B.    Whether Plaintiff Exhausted His Administrative Remedies.

Defendant argues that Plaintiff's FOIA request was not "perfected" and therefore he did not exhaust his administrative remedies because he did not reasonably describe the records sought. The "FOIA confers jurisdiction on the district courts 'to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld.'" *Bloomer v. U.S. Dep't of Homeland Sec.*, 870 F. Supp. 2d 358, 364 (D. Vt. 2012) (quoting 5 U.S.C. § 552(a)(4)(B)). It "requires that agency records be made available promptly upon a request that 'reasonably describes such records and . . . is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" *Ruotolo v. Dep't of Justice, Tax Div.*, 53 F.3d 4, 9 (2d Cir. 1995) (quoting 5 U.S.C. § 552(a)(3)). In determining whether records have been "reasonably described" for the purposes of the FOIA, "[t]he linchpin inquiry is whether the agency is able to determine precisely what records (are) being requested." *Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 326 (D.C. Cir. 1982) (internal quotation marks

7

omitted).

"Exhaustion of administrative remedies is normally required as a precondition to suit under the FOIA, unless waived by a party or the Court." *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 667 (S.D.N.Y. 2010). "An agency's obligations commence upon receipt of a valid request; failure to file a perfected request therefore constitutes failure to exhaust administrative remedies." *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002).

> If an agency receives a request that falls short of the statutory or regulatory requirements, then "it is not obligated to process the request," and if a "requester nonetheless files suit, [then he or] she is said to have failed to exhaust [his or] her administrative remedies, and [he or] she must file a perfected request before a court will compel the agency to respond."

*Goldstein v. IRS*, 279 F. Supp. 3d 170, 176 (D.D.C. 2017) (quoting *Kalu v. IRS*, 2015 WL 4077756, at *4 (D.D.C. July 1, 2015)).

Here, Defendant opted to respond to Plaintiff's FOIA request by producing two memoranda and withholding 1,377 pages of responsive documents under FOIA Exemptions 5 and 6. Although Defendant may have been under no obligation to process Plaintiff's FOIA request, it chose to do so and made no initial claim that it was unreasonably broad or burdensome. In such circumstances, Defendant should not be heard to belatedly assert that Plaintiff's claim was not perfected.

Even if Plaintiff's FOIA request were not perfected, Defendant's untimely response to it serves as a waiver of its exhaustion defense. FOIA requires that each agency "determine within [twenty] days . . . after the receipt of any [FOIA] request whether to comply with such request and shall immediately notify the person making such request" and "make a determination with respect to any appeal within twenty days . . . after the receipt of such appeal." 5 U.S.C. § 552(a)(6)(A)(i)-(ii). "If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 185 (D.C. Cir. 2013); *see New York v. Salazar*, 701 F. Supp. 2d 224, 233 n.6 (N.D.N.Y. 2010) (observing that "[u]nder the statute, . . . a party is deemed to have constructively exhausted all administrative

remedies if the agency fails to make a determination with respect to any appeal within twenty days . . . after receipt of any such request"). In other words,

> [i]f the agency does not adhere to FOIA's explicit timelines, the "penalty" is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court. This scheme provides an incentive for agencies to move quickly but recognizes that agencies may not always be able to adhere to the timelines that trigger the exhaustion requirement.

*Citizens for Resp. & Ethics in Wash.*, 711 F.3d at 189; *see also M.K. v. U.S. Dep't of Justice*, 1996 WL 509724, at *3 (S.D.N.Y. Sept. 9, 1996) (holding that "the government's failure to respond to [a plaintiff's] request within the statutory . . . time limit does not give [a plaintiff] the right to obtain the requested documents; it merely amounts to an exhaustion of administrative remedies and allows [a plaintiff] to bring [a] lawsuit").

For the foregoing reasons, Defendant's motion to dismiss or, in the alternative, for summary judgment because Plaintiff failed to exhaust his administrative remedies is DENIED.

## C.    Whether Plaintiff's FOIA Request was Unreasonably Broad and Burdensome.

Plaintiff asserts that Defendant's initial decision did not characterize Plaintiff's FOIA request as unreasonably broad and burdensome and that it "would set a dangerous precedent" (Doc. 16 at 12) if Defendant could conduct a narrow search and withhold documents and then, when challenged, claim a FOIA request was too broad. Plaintiff further argues that producing 1,377 is not unreasonably burdensome and Defendant failed to show with reasonable specificity the withheld documents are subject to FOIA Exemptions 5 and 6.[4]

"An agency need not respond to a request that is so broad as to impose

---

[4] "When an agency withholds requested information, it must demonstrate that the information is exempt from disclosure. . . . 'with reasonable specificity[.]'" *Jud. Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 25 (D.D.C. 2000) (quoting *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979)). The Chyn Declaration explains only that the documents were withheld "under FOIA Exemptions 5 and 6." (Doc. 14-1 at 5, ¶ 9.) The court has no means of evaluating whether the cited exemptions apply.

an unreasonable burden upon the agency, such as one which require[s] the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 611 (S.D.N.Y. 2018) (quoting *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 2017 WL 1494513, at *11 (S.D.N.Y. Apr. 19, 2017)) (internal quotation marks omitted) (alteration in original). "The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requestors." *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 228 (D.D.C. 2012) (quoting *Assassination Archives & Rsch. Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989) (internal quotation marks omitted). "Nonetheless, if an agency claims that responding to a request is unreasonable, 'it bears the burden to provide [a] sufficient explanation as to why such a search would be unreasonably burdensome.'" *Seife*, 298 F. Supp. 3d at 612 (quoting *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 275 (D.D.C. 2014)) (internal quotation marks omitted) (alteration in original). "To make this determination, a court may rely on agency affidavits or declarations that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Ayuda, Inc.*, 70 F. Supp. 3d at 275. "The [a]ffidavits submitted by an agency are accorded a presumption of good faith." *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009) (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (internal quotation marks omitted) (alteration in original).

"Courts often look for a detailed explanation by the agency regarding the time and expense of a proposed search in order to assess its reasonableness." *Wolf v. CIA*, 569 F. Supp. 2d 1, 9 (D.D.C. 2008). "By contrast, 'where an agency vaguely characterizes a search as costly and notes that such a search would take many hours to complete,' courts have 'rejected the agency's claim as inadequate in explaining why the search would be unreasonably burdensome.'" *Long v. U.S. Immigr. & Customs Enf't*, 2020 WL 5994182, at *13 (N.D.N.Y. Oct. 9, 2020) (quoting *Pinson v. U.S. Dep't of Justice*, 80 F. Supp. 3d 211, 217 (D.D.C. 2015)) (internal quotation marks omitted).

Among the factors that a court may consider in assessing the claimed

> burden are the amount of time, expense, and personnel that would be
> required to complete document searches and production, as well as whether
> the agency has the existing technology or would have to purchase new
> technology to perform those tasks.

*Long v. Immigr. & Customs Enf't*, 149 F. Supp. 3d 39, 55 (D.D.C. 2015). "Courts are
entitled to rely upon an agency affidavit for an explanation of why a further search would
be 'unduly burdensome' when the affidavit is 'relatively detailed, nonconclusory, and not
impugned by evidence in the record of bad faith on the part of the agency.'" *Wolf*, 569 F.
Supp. 2d at 9 (quoting *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983)).

In accordance with the Chyn Declaration, Defendant explains that it "determined
[its] initial interpretation of [Plaintiff's] FOIA request was too narrow and the search
performed was not reasonably calculated to obtain all records responsive to [Plaintiff's]
FOIA request." (Doc. 14-1 at 5, ¶ 12.) Ms. Chyn notes that the term "neurological" was
included in Defendant's initial search because Plaintiff provided as an example of a
record he was seeking "Medical Criteria for Evaluating Neurological Disorders." *Id.* at
10, ¶ 19. Upon discovering that the initial memoranda were not responsive, based on
Plaintiff's appeal, Defendant limited its search to the terms "headache" or "migraine" and
sampled the records to determine whether responsive records were likely to be obtained.
Defendant likewise conducted a second search using the term "neurological" and, after
sampling several records, determined that records were unlikely to be responsive and
therefore did not include those documents in its 1,581,644-page estimate.

Plaintiff responds that the Chyn Declaration fails to account for the two-pronged
nature of his request and had Defendant properly interpreted his FOIA request and made
a separate search based on each prong, "[i]t could very well be that responding to one of
these requests is not at all burdensome."[5] (Doc. 16 at 13.) While this may be true, it does
not negate the fact that Defendant located at least 1,581,644 responsive documents

---

[5] Defendant asserts that Plaintiff submitted a single request with both prongs and never offered to
narrow his request. In contrast, Plaintiff asserts that after filing suit he offered to narrow his
request and Defendant terminated those negotiations. Neither party provides citations to the
record to support these assertions.

pursuant to its second search. The test is whether the search was undertaken in good faith and reasonably responsive to the FOIA request, not whether a better search method could be devised. *See Robert v. CIA*, 779 F. App'x 58, 59 (2d Cir. 2019) (holding that declarations "'are accorded a presumption of good faith' and 'cannot be rebutted by purely speculative claims' or bare assertions") (quoting *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 489 (2d Cir. 1999)).

Plaintiff appealed on the basis that Defendant was charging a fee and withholding 1,377 responsive documents pursuant to FOIA Exemptions 5 and 6. He further stated, "I also appeal the withholding by [Defendant] of any further relevant documents responsive to the FOIA request which [Defendant] may not have included within the 1,377 page(s) of respons[iv]e documents cited in the response letter." (Doc. 1-1 at 1.) This latter aspect of Plaintiff's appeal provided justification for Defendant's second search. Plaintiff thus fails to establish that Defendant's second search was undertaken in bad faith.

Plaintiff's FOIA request sought "all documents, regardless of age, pertaining to [Social Security Administration] assessment, evaluation, and decisions regarding inclusion or exclusion of a proposed listing for impairments due to migraine and other headache disorders in the [Social Security Administration] Listing of Impairments (Blue Book)." (Doc. 15 at 1.) Although Plaintiff provided examples of the documents requested, he did not limit his request to those documents, but instead stated he sought "all relevant correspondence, emails, memoranda, drafts, cost-benefit analyses, public comments, and related guidance documents, including those documents from and between all relevant [Social Security Administration] offices . . . as well as those document[s] from and between [Social Security Administration] offices and offices of other Federal Government agencies." *Id.* at 1-2. Plaintiff further sought:

> all documents . . . , regardless of age, pertaining to, and/or informing, guidance as to how Listings of Impairments (e.g. 11. 02 Epilepsy) are to be appropriately utilized and interpreted . . . by [Social Security Administration] adjudicators and administrative law judges[ ] in order to assess and determine medical equivalency and [headache and migraine] impairments[.]

*Id.* at 2. On its face, Plaintiff's FOIA request had no time limits, no document type limitations, no custodian limitations, no geographic locations, and encompassed numerous subject matters. It extends not only to the documents within Defendant's offices but also between Defendant and all "offices of other Federal Government agencies." *Id.* It was therefore clearly unreasonably broad in the breadth of records it sought.

Defendant contends that reviewing the identified 1,581,644 pages alone would take at least 193,311 hours of full-time work and would cost approximately $7,293,140.00 because, based on the type of records sought, it would require a line-by-line manual review of documents likely to contain deliberative process exemptions. The Chyn Declaration is detailed and nonconclusory as to how these estimates were reached. The court concludes that it was submitted in good faith.

For the foregoing reasons, Defendant has sustained its burden of demonstrating that Plaintiff's FOIA request was unreasonably broad and burdensome based not only on the Chyn Declaration, but due to the breadth of the records sought.[6] Defendant's motion for summary judgment on this issue is thus GRANTED and Plaintiff's cross-motion for summary judgment is DENIED. Defendant must specify a basis for withholding the initial 1,377 responsive documents identified under Exemptions 5 and 6 within thirty (30) days of this Opinion and Order.

---

[6] *See, e.g.*, *Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 204 (D. Conn. 2014) (concluding that based on the plaintiffs' "request for all of the individual service members' separation packets[,]" which included at least 26,000 records, "that the plaintiffs' original request would have imposed an unreasonable burden on the defendants[.]"); *Nation Mag., Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 892 (D.C. Cir. 1995) (finding that a "search through 23 years of unindexed files for records pertaining to [a single person] . . . would impose an unreasonable burden on the agency"); *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 276 (D.D.C. 2014) (holding that "performing a manual review of the Consumer Sentinel database complaints for exempt personal identifying information[,]" which defendant estimated would take about 8,000 hours, "would impose an unreasonable burden on the [defendant] well beyond what FOIA requires from an agency"); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Cust. Enf't*, 2017 WL 1494513, at *12 (S.D.N.Y. Apr. 19, 2017) (ruling that a review which "would take between 1,000 and 3,000 work weeks to complete, or between 19 and 58 work years, . . . would be unreasonably burdensome.").

### D.   Whether Defendant Violated Plaintiff's Right to a Fee Waiver or Reduction Under FOIA.

Defendant asserts that it was entitled to assess fees for its response to Plaintiff's

FOIA request under the Social Security Act ("SSA") and agency regulations because:

> whenever the Commissioner of Social Security or the Secretary determines
> that a request for information is made . . . for any other purpose not directly
> related to the administration of the program or programs under this chapter
> to which such information relates, such Commissioner or Secretary may
> require the requester to pay the full cost, as determined by such
> Commissioner or Secretary, of providing such information.

42 U.S.C. § 1306(c). The "major criteria" the Social Security Administration considers in

deciding whether a proposed use is "directly related" to a "program purpose" are:

> (A) Is the information needed to pursue some benefit under the Act?
>
> (B) Is the information needed solely to verify the accuracy of
> information obtained in connection with a program administered
> under the Act?
>
> (C) Is the information needed in connection with an activity which
> has been authorized under the Act?
>
> (D) Is the information needed by an employer to carry out her or his
> taxpaying responsibilities under the Federal Insurance Contributions
> Act or section 218 of the Act?

> (ii) We will consider on a case by case basis those requests which do not
> meet these criteria but are claimed to be program related.

20 C.F.R. § 402.170(a)(2)(i)-(ii).

Defendant contends that Plaintiff's FOIA request is not program-related and failed

to comply with the requirements for requesting a fee waiver because a requester "must

make [a] request for a waiver or reduction at the same time [he or she] make[s] [his or

her] request for records. [He or she] should explain why [he or she] believe[s] a waiver or

reduction is proper under the analysis in paragraphs (a) through (d) of this section." 20

C.F.R. § 402.185(e). Without denying that he failed to timely request a fee waiver,

Plaintiff argues that he is entitled to one because he is not seeking records for a

commercial purpose or, in the alternative, under § 1106(c) of the SSA, his request is

program-related because disclosure will help educate the public and inform disability

claimants how to assert claims based on headache and migraine disorders.

Under FOIA, "fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research[.]" 5 U.S.C. § 552(a)(4)(A)(ii)(II). Duplication fees may be waived or reduced "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

In support of his assertion that his FOIA request was non-commercial and was in the public interest, Plaintiff contends that the information sought was for a scholarly purpose and would increase the public's understanding of Defendant's processes and policies for determining headache and migraine-related disabilities, which affect approximately fifty million people in the United States. While this may be true, it does not end the inquiry because 20 C.F.R. § 402.185(e) states: "You must make your request for a waiver or reduction at the same time you make your request for records." Plaintiff did not request a waiver or reduction of fee until he appealed Defendant's initial response to his FOIA request.

Plaintiff argues that his untimely fee request or appeal should be excused because the Open Government Act of 2007 (the "2007 Amendment") prohibits an agency from charging a fee if an agency fails to comply with FOIA's deadlines. He asserts the 2007 Amendment was intended to strengthen FOIA and repealed the SSA's "major criteria" framework for analyzing a fee waiver as evident by the SSA's provision that "an agency shall not assess any search fees . . . under this subparagraph if the agency has failed to comply with any time limit under paragraph (6)[,]" 5 U.S.C. § 552(a)(4)(A)(viii), which refers to an agency's requirement to respond to any FOIA request within twenty days of its receipt.

Under 5 U.S.C. § 552(a)(4)(A)(vi) none of the limitations to the FOIA fee provisions apply when Congress has enacted a separate statute setting fees for particular

types of records: "[n]othing in this subparagraph shall supersede fees chargeable under a statute specifically providing for setting the level of fees for particular types of records." As the Supreme Court has observed:

> When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at liberty to pick and choose among congressional enactments and must instead strive to give effect to both. A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing a clearly expressed congressional intention that such a result should follow. The intention must be clear and manifest. And in approaching a claimed conflict, we come armed with the stron[g] presum[ption] that repeals by implication are disfavored and that Congress will specifically address preexisting law when it wishes to suspend its normal operations in a later statute.

*Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018) (internal citations and quotation marks omitted) (alterations in original).

In this case, the two statutes can be harmonized by interpreting the 2007 Amendment as prohibiting the charging of fees when an agency fails to timely respond to a FOIA request. "To underscore Congress's belief in the importance of the statutory time limit, the 2007 Amendments declare that '[a]n agency shall not assess search fees . . . if the agency fails to comply with *any time limit*' of FOIA." *Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31, 38 (D.D.C. 2011) (quoting 5 U.S.C. § 552(a)(4)(A)(viii)) (emphasis and alterations in original).[7] Defendant's interpretation would render the 2007

---

[7] Congressional intent further evinces the desire for the 2007 Amendment to strengthen FOIA's time requirements:

> Congress passed the [OGA] ("2007 Amendment[ ]") to amend certain sections of FOIA, including the provisions on which Plaintiff relies here. *See* Pub. L. 110–175, 121 Stat. 2524 (2007) (codified at 5 U.S.C. §§ 552(a)(4)(A) and 552(a)(6)(A)). The legislative history of the 2007 Amendment[ ] evinces a strong desire by Congress to curb agencies' delays in processing FOIA requests. *See* S. Rep. No. 110-59, 110th Cong., 1st Sess. (Apr. 30, 2007). The Senate report explains that the 2007 Amendment[ ] "address[ ] the growing backlog of FOIA requests and *restore[ ] meaningful deadlines* for agency action, by ensuring that the 20-day statutory clock runs immediately upon an agency's receipt of a request and *by imposing consequences* on federal agencies for missing the deadline." *Id.* at 3 (emphasis added). Indeed, "the major delays encountered

Amendment superfluous because it would allow an agency to charge fees regardless of whether it complied with FOIA deadlines, provided it could cite a separate statute setting fees. Defendant is therefore prevented from assessing a fee when it fails to comply with FOIA time requirements unless there is an exception under 5 U.S.C. § 552(a)(4)(viii)(II). Any other interpretation would render the 2007 Amendment a nullity and frustrate its legislative purpose. *See Cnty. of Nassau v. Leavitt*, 524 F.3d 408, 416 (2d Cir. 2008) (holding "[w]e are obliged[, however,] to give effect, if possible, to every clause and word of a statute, and to render none superfluous") (second alteration in original) (internal quotation marks omitted).

Because no exception excuses Defendant's non-compliance with FOIA deadlines, Plaintiff's cross-motion for summary judgment for a refund of his fee is GRANTED and Defendant's motion for summary judgment on that same issue is DENIED.

### E.    Whether Plaintiff is Entitled to Costs.

Defendant contends that Plaintiff is not entitled to attorney's fees and costs because he has not substantially prevailed in this matter. The FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "To be entitled to such an award, a litigant must first establish eligibility by showing that he [or she] 'substantially prevailed' in his [or her] lawsuit." *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009). If a plaintiff substantially prevailed, he or she must establish:

> entitle[ment] to an award under the four criteria the court weighs in determining whether fees are appropriate: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a

---

by FOIA requestors" were "[c]hief among the problems with FOIA" that Congress sought to remedy by passing the 2007 Amendment[ ]. *Id.* (noting also that "the oldest outstanding FOIA requests date back to 1989-before the collapse of the Soviet Union").

*Bensman v. Nat'l Park Serv.*, 806 F. Supp. 2d 31, 37-38 (D.D.C. 2011).

reasonable basis for withholding requested information.

*Id.*

In this case, although Plaintiff's FOIA request was unreasonably broad and burdensome, Defendant provided Plaintiff with no opportunity to narrow it but instead waited until Plaintiff filed an appeal to conduct a more thorough search. In doing so, Defendant failed to comply with FOIA's deadlines. Had Defendant acted in a timely manner and rejected Plaintiff's initial request, Plaintiff could have narrowed it and obtained responsive documents for his scholarly endeavors. Defendant offered Plaintiff no explanation as to why the withheld documents were supported by FOIA exemptions and offers no explanation to this court. Until it does so, the court cannot evaluate whether its first response to Plaintiff's FOIA request wrongfully withheld responsive documents. As Defendant concedes its first search was too narrow, it not only substantially contributed to the delay in this case, but impeded Plaintiff's request for documents in furtherance of the public interest.

Plaintiff has no apparent commercial interest in the information, and the Agency's piecemeal response to his request frustrated the legislative purpose of FOIA. Defendant has, however, prevailed in its argument that Plaintiff's FOIA request was unreasonably broad and burdensome. Because this case presents a close call as to which party is the prevailing party, the court awaits Defendant's submission of information in support of the withheld documents under FOIA Exemptions 5 and 6.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss or, in the alternative, for summary judgment and GRANTS IN PART and DENIES IN PART Plaintiff's cross-motion for summary judgment. The court ORDERS Defendant to specify a basis for withholding the initial 1,377 responsive documents identified under Exemptions 5 and 6 within thirty (30) days of this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this ___8th___ day of March, 2021.

Christina Reiss, District Judge
United States District Court