U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 DEC 10 PM 12: 11

CLERK

BY_____LAW_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ROBERT E. SHAPIRO, )
)
Plaintiff, )
)
v. ) Case No. 2:19-cv-000238
)
UNITED STATES SOCIAL SECURITY )
ADMINISTRATION, )
)
Defendant. )

**OPINION AND ORDER RE: DOCUMENTS WITHHELD PURSUANT TO FOIA EXEMPTIONS AND GRANTING IN PART PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES AND COSTS**
(Doc. 16)

Plaintiff Robert E. Shapiro brings this suit pursuant to the Freedom of Information Act ("FOIA") against the United States Social Security Administration ("SSA" or "Defendant"), arising from its alleged failure to adequately respond to his FOIA request. Pending before the court is Plaintiff's request for attorney's fees and costs.

On March 8, 2021, the court issued an Opinion and Order granting in part and denying in part SSA's motion to dismiss or, in the alternative, for summary judgment. The court found that SSA waived its exhaustion defense by failing to timely respond to Plaintiff's FOIA request. The court also granted Plaintiff's motion for a refund of $2,908.00 in fees he paid to SSA because the court found SSA's failure to timely respond to Plaintiff's FOIA request precluded it from charging a fee. However, the court held that Plaintiff's FOIA request was unreasonably broad and burdensome and granted summary judgment in favor of SSA on that issue.

The court deferred judgment on Plaintiff's request for attorney's fees and costs, stating: "Defendant offered Plaintiff no explanation as to why the withheld documents were supported by FOIA exemptions and offers no explanation to this court. Until it does so, the court cannot evaluate whether its first response to Plaintiff's FOIA request

wrongfully withheld responsive documents." (Doc. 25 at 18.) The court ordered SSA to provide an explanation for its initial withholding of responsive documents pursuant to Exemptions 5 and 6. SSA complied with this order and submitted descriptions of the withheld documents and the claimed bases for withholding supported by an affidavit.

Plaintiff is represented by Emily J. Joselson, Esq. and Justin G. Sherman, Esq. Assistant United States Attorney Jason M. Turner represents SSA.

I.     Conclusions of Law and Analysis.

   A.     **Whether the Responsive Documents Were Properly Withheld Under FOIA.**

"FOIA mandates the disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions." *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). When an agency "withholds records in a FOIA case and a complaint challenges such withholding, the district court must 'determine the matter *de novo*[.]'" *Seife v. U.S. Dep't of State*, 298 F. Supp. 3d 592, 606 (S.D.N.Y. 2018) (quoting 5 U.S.C. § 552(a)(4)(B)).

"An agency resisting disclosure of the requested records has the burden of proving the applicability of an exemption[,]" *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 68 (2d Cir. 2009) (internal quotation marks and citation omitted), and "doubts [are] resolved in favor of disclosure." *A. Michael's Piano, Inc. v. F.T.C.*, 18 F.3d 138, 143 (2d Cir. 1994). "The agency may meet its burden by submitting a detailed affidavit showing that the information logically falls within the claimed exemptions." *Wilner*, 592 F.3d at 68 (internal quotation marks and citation omitted). "[A] court must accord substantial weight to the agency's affidavits, provided that the justifications for nondisclosure are not controverted by contrary evidence in the record or by evidence of . . . bad faith." *Id.* (internal quotation marks and citations omitted) (alterations adopted).

In *Vaughn v. Rosen*, the Court of Appeals for the D.C. Circuit held that in order to assure "that allegations of exempt status are adequately justified . . . courts will simply no longer accept conclusory and generalized allegations of exemptions . . . but will require a relatively detailed analysis in manageable segments." 484 F.2d 820, 826 (D.C. Cir.

1973). "Thus, when invoking a FOIA exemption, agencies submit a '*Vaughn* index'—a list of withheld documents and claimed exemptions—and a '*Vaughn* affidavit,' describing the documents and the agency's rationale for withholding them." *Seife*, 298 F. Supp. 3d at 606. Requiring such submissions serves three goals:

> (1) it forces the government to analyze carefully any material withheld, (2) it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, (3) and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court.

*Halpern v. F.B.I.*, 181 F.3d 279, 291 (2d Cir. 1999).

      SSA filed the declaration of Sarah Reagan, the acting Division Director for the Office of Privacy and Disclosure in the SSA Office of the General Counsel ("OGC") (the "*Vaughn* Affidavit"), which includes a "Withheld Records Index" (the "*Vaughn* Index"). (Doc. 26-1.) Ms. Reagan avers that in response to Plaintiff's FOIA request, SSA released two memoranda and withheld responsive documents under FOIA Exemptions 5 and 6. Although the SSA's original response indicated 1,377 pages of responsive documents were withheld, Ms. Reagan notes that 1,845 pages were actually withheld. The withheld records are "mostly emails and contain some duplicative attachments, which must be converted to a PDF or another printable format to determine a page count. My Office's records do not indicate how the 1,377 page count was originally derived but it was likely due to administrative error in conversion and/or de-duplication." (*Id.* at 2 n.1.) The records withheld were collected from SSA's Office of Program Law ("OPL") within the OGC.

      Ms. Reagan states that records were properly withheld under Exemption 5 because they are attorney work product or covered by attorney-client privilege or deliberative process privilege. The withheld documents consist of fifty-three email chains (*Vaughn* Index numbers 1 to 51) and three draft documents retrieved from OPL's files (*Vaughn* Index numbers 52 and 53). Ms. Reagan avers that the emails contain "attorney advice, counsel, and deliberative comments on varying rules, regulations, or agency plans in draft form, in response to agency component's requests for legal advice." (*Id.* at 2, ¶ 5) "The

3

other draft documents were working drafts of records shared with OPL for review." *Id.* at 2-3, ¶ 5.

Exemption 6 was cited to withhold "the names and contact information of agency employees mentioned in the records." *Id.* at 4, ¶ 9. "Release of these individuals' names and contact information may result in unwanted contacts, questioning, or harassment by those interested in or dissatisfied with agency practices and would not shed light on anything meaningful about how the agency performs its statutory duties." (*Id.* at 5, ¶ 9.)

Ms. Reagan states that "[b]ecause all records were part of attorney files stemming from requests for legal advice or otherwise containing attorney work[ ]product, segregation of the records would not be possible without disclosing or giving insight into privileged material or attorney[ ]work product." (Doc. 26-1 at 5, ¶ 10.) The *Vaughn* Index contains fifty-three entries, each of which includes an identifying number, a date, a brief document description, a note of any attachments, and the specific exemptions which allegedly justify non-disclosure.

### 1. Whether the Court Should Conduct an *In Camera* Review.

Plaintiff asks the court to conduct *in camera* review because of "uncertainty on the appropriateness of Defendant's search and withholdings." (Doc. 31 at 13.) District courts "may examine the contents of . . . agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B).

"[A] district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with *Vaughn*." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998). Rather, "[t]he district court should first offer the agency the opportunity to demonstrate, through detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions." *Id.* (internal quotation marks and citation omitted). "If the agency fails to provide a sufficiently detailed explanation to enable the district court to make a *de novo* determination of the

agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery." *Id.*

*In camera* review may be appropriate when "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims[;] the number of records involved is relatively small[;] a discrepancy exists between an agency's affidavit and other information that the agency has publicly disclosed[;] and when the dispute turns on the contents of the documents, and not the parties' interpretations of the documents." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 307 (D.D.C. 2007) (internal quotation marks omitted) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 119 (D.D.C. 2005)). "Ultimately, however, courts disfavor *in camera* inspection and it is more appropriate in only the exceptional case." *Id.* (quoting *Elec. Priv. Info. Ctr.*, 384 F. Supp. 2d at 119); *see also N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) (explaining that FOIA's *in camera* review provision "is designed to be invoked when the issue before the District Court could not be otherwise resolved").

Plaintiff argues that SSA's *Vaughn* Index is deficient because it lists "no specific senders or recipients." (Doc. 31 at 8.) Plaintiff cites as support several cases in which privilege logs provided no description of the sender or recipient. *See Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006) (observing that "[t]he Privilege Logs' deficiencies are glaring inasmuch as . . . there are no descriptions as to the identities of the sender and recipient of the documents[.]"); *Post v. Killington, Ltd.*, 262 F.R.D. 393, 400 (D. Vt. 2009) (holding that where the defendant listed "the recipients of a particular communication" as "unknown[,]" the burden of establishing privilege was not met). In this case, the *Vaughn* Index provides descriptions of senders and recipients that are sufficient to permit review. *See, e.g.*, Doc. 26-1 at 6 ("Email string between OGC attorneys[.]"); *id.* at 9 ("Email from OGC to OGC controls box requesting transmission of legal guidance[.]"); *id.* at 10 ("[E]mail string starts with a 2/3/16 component request to OGC for legal advice[.]"). There is "no basis for a requirement that

5

authors and recipients must be identified by proper name." *Carter, Fullerton & Hayes, LLC v. F.T.C.*, 601 F. Supp. 2d 728, 739 (E.D. Va. 2009).

Although Plaintiff contends that the "specific senders [and] recipients" are "critical to determin[e] whether the attorney-client and attorney work product privileges were waived by transmitting the communication to third parties[,]" (Doc. 31 at 8), there is no indication from the *Vaughn* Index that any of these documents were communicated to parties outside SSA. Plaintiff cites no "contradictory evidence in the record[.]" *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (internal quotation marks omitted). Because SSA's *Vaughn* Index is afforded a "'presumption of good faith[,]'" *Wilner*, 592 F.3d at 69 (quoting *Carney v. D.O.J.*, 19 F.3d 807, 812 (2d Cir. 1994)), Plaintiff's speculation about potential communication of privileged documents to third parties does not justify *in camera* review. *See Carter, Fullerton & Hayes*, 601 F. Supp. 2d at 739 (holding "allegations that fail to rise above mere speculation[] that there is some discrepancy or error in the claimed exemptions" are "not enough").

Plaintiff also challenges the adequacy of the *Vaughn* Index because it provides no separate justifications for withholding email attachments. The descriptions of the documents in the *Vaughn* Index, however, describe both emails and their attached documents. *See, e.g.*, Doc. 26-1 at 6 (describing document as an "[e]mail from agency policy component to OGC and other components involved in deliberative discussions on rule development[]" and attachments as "[t]wo working draft versions of the rule definitions (in clean and redline form)"); *id.* at 7 (describing document as "[e]mail between OGC attorneys discussing component request for legal advice on a working draft of[ ]a rule[]" and attachment as "[t]he draft rule and documents relating to whether OGC approves the drafts, including OGC comments"). SSA has thus provided sufficient information to allow the court to ascertain whether emails and their attachments were properly withheld.

Plaintiff further argues that the court should conduct an *in camera* review of the withheld documents because there are relatively few documents at issue; SSA only searched OPL for documents, increasing the likelihood that it would find only privileged

6

documents; and because SSA has reported divergent quantities of responsive documents. Even if credited, this neither demonstrates bad faith by SSA nor casts doubt on the veracity of the *Vaughn* Affidavit and *Vaughn* Index. *See A. Michael's Piano*, 18 F.3d at 143.

Because the *Vaughn* Index is sufficiently "detailed to permit meaningful review of exemption claims," this is not an "exceptional case[,]" and the court DENIES Plaintiff's request for an *in camera* review. *People for the Am. Way Found.*, 503 F. Supp. 2d at 307 (internal quotation marks and citations omitted).

### 2. Whether Records Were Properly Withheld Pursuant to FOIA Exemption 5.

Exemption 5 covers "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). "Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work-product, executive privilege) are protected from disclosure under Exemption 5." *Tigue v. D.O.J.*, 312 F.3d 70, 76 (2d Cir. 2002) (internal quotation marks and citations omitted).

SSA argues that the responsive documents were properly withheld pursuant to Exemption 5 because they reflect attorney work product, attorney-client privileged communications, or documents such as drafts covered by the deliberative process privilege. Plaintiff responds that records were not properly withheld under Exemption 5 because the work product doctrine and deliberative process exception do not apply and because the attorney-client privilege is negated by the crime-fraud exception.

#### i. Whether Records Were Properly Withheld Under the Attorney Work Product Doctrine.

SSA asserts that *Vaughn* Index documents 3-7, 11-12, 16-28, 33, 36-40, and 42-51 were properly withheld under the attorney work product doctrine, which shields from disclosure materials that are "prepared in anticipation of litigation or for trial by or for another party or its representative[.]" Fed. R. Civ. P. 26(b)(3)(A). "Where a document was created because of anticipated litigation, and would not have been prepared in

7

substantially similar form but for the prospect of that litigation," it is protected work product. *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998). "Conversely, protection will be withheld from 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation.'" *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (quoting *Adlman*, 134 F.3d at 1202).

> In the *Vaughn* Affidavit, Ms. Reagan avers that:
>
> OPL is responsible for providing legal advice on program policy, regulation, and related matters; it is also responsible for program-related litigation and coordinating program litigation strategy nationwide. The agency program rules, regulations, listing, and policies that are the subject of these records are relied upon in agency administrative proceedings, which are routinely subject to appeal and legal challenge. Thus, OPL attorneys' comments and advice in these records are covered by the attorney work-product privilege. Disclosure of these records would reveal the agency's attorneys' mental impressions, conclusions, opinions or other legal theories concerning reasonably anticipated litigation, which would hinder the agency's ability to litigate cases and formulate positions on matters involved.

(Doc. 26-1 at 3, ¶ 6) (footnote omitted).

*Vaughn* Index document 36 is the only document for which the attorney work product privilege is the sole claimed exemption. The *Vaughn* Index describes document 36 as "Email between OGC personnel about litigation strategy[.]" *Id.* at 9. SSA's description of *Vaughn* Index document 36 is sufficient to establish the document is attorney work product that falls within Exemption 5. *See N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 154 (1975) ("Whatever the outer boundaries of the attorney's work-product rule are, the rule clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy."). SSA's descriptions of other documents in the *Vaughn* Index do not address whether the legal advice provided was in anticipation of litigation. *See, e.g.*, Doc. 26-1 at 6 ("Email string between OGC attorneys about agency component request for OGC legal advice of working drafts of an SSR and a related memo."); *id.* at 9 ("Email

8

from component requesting OGC legal advice on plans for regulatory priorities."); *id.* at 10 ("The email string starts with a 2/3/16 component request to OGC for legal advice on working drafts of a regulation and related internal memo."). For these documents, the *Vaughn* Index is not sufficient to support a work product exemption.

"[N]ot every document prepared by a government attorney constitutes work product[.]" *Am. Civ. Liberties Union v. D.O.J.*, 210 F. Supp. 3d 467, 476 (S.D.N.Y. 2016). "While it may be true that the prospect of future litigation touches virtually any object of a [government] attorney's attention, if the agency were allowed to withhold any document prepared by any person in the [g]overnment with a law degree simply because litigation might someday occur, the policies of the FOIA would be largely defeated." *Senate of the Commonwealth of Puerto Rico v. D.O.J.*, 823 F.2d 574, 586–87 (D.C. Cir. 1987) (internal quotation marks and citation omitted). A court evaluating an attorney work product claim must "differentiate situations in which lawyers have litigation adequately in mind from those in which lawyers are not (yet) sufficiently anticipating litigation." *Nat'l Ass'n of Crim. Def. Laws. v. D.O.J. Exec. Off. for U.S. Att'ys*, 844 F.3d 246, 253 (D.C. Cir. 2016).

Ms. Reagan avers that the withheld records concern "reasonably anticipated litigation" because "agency program rules, regulations, listing, and policies" are "routinely subject to appeal and legal challenge." (Doc. 26-1 at 3, ¶ 6.) Attorney work product may include documents created by government lawyers acting "as legal advisors protecting their agency clients from the possibility of future litigation[,]" but only if "under all of the circumstances, the lawyers prepared the materials 'in anticipation of litigation.'" *In re Sealed Case*, 146 F.3d 881, 885 (D.C. Cir. 1998); *accord Schaeffler*, 806 F.3d at 43 ("A document will be protected if, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'") (quoting *Adlman*, 134 F.3d at 1202) (emphasis omitted).

SSA's descriptions of records as generally involving legal advice and Ms. Reagan's invocation of routine legal challenges are not enough to demonstrate that the

9

documents were created in anticipation of litigation. *See In re Sealed Case*, 146 F.3d at 886 (finding documents were attorney work product only after government lawyers in uncontested affidavits asserted "a significant concern that litigation over this issue was probable" and that the agency sought their "advice, counsel, and services *in anticipation of such litigation*") (emphasis supplied) (internal quotation marks omitted). The court therefore rejects SSA's attorney work product justification for withholding *Vaughn* Index documents 3-7, 11-12, 16-28, 33, 37-40, and 42-51.

        ii.        **Whether Records Were Properly Withheld Under Attorney-Client Privilege.**

SSA contends that all withheld documents, with the exception of *Vaughn* Index document 36, fall within the attorney-client privilege because they contain confidential legal advice and other confidential communications between SSA and its legal counsel. Plaintiff counters that the attorney-client privilege is not applicable because of the crime-fraud exception.

The crime-fraud exception removes from the attorney-client privilege "client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc.*, 13 F.3d 633, 636 (2d Cir. 1994) (quoting *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984)). To demonstrate the crime-fraud exception applies, Plaintiff must establish: (1) "that the client communication or attorney work product in question was itself in furtherance of the crime or fraud" and (2) "probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity." *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir.1999) (internal quotation marks and emphasis omitted).

According to Plaintiff, the crime-fraud exception applies to all documents withheld by SSA because (1) "[t]here is probable cause to believe Defendant's 2016 rulemaking was misconduct that violated the law[,]" (Doc. 31 at 4); and (2) "by making the process disadvantageous to claimants seeking benefits for migraine and headache disorders, relative to other claimants[,]" SSA "failed to pursue Administrative Procedure

10

Act-mandated 'reasoned decision making'" and "produce[d] disparate and inequitable impacts on Americans disabled by migraine[,]" thereby violating "explicit and unambiguous federal civil rights statutes, and [Fifth] and [Fourteenth] amendment procedural due process rights[,]" *id.* at 4-7. Plaintiff adds: "The communications Defendant seeks to withhold are in furtherance of these violations: the rulemaking process itself and the discrimination of applicants seeking benefits for migraine and headache disorders." *Id.* at 7.

Improper rulemaking, even if it results in disparate impacts or unfortunate outcomes, is not a crime. "It is . . . clear that the statutorily-prescribed remedy for the underlying problem of improper agency decision making . . . is judicial review and a remand to the agency for a more appropriately-reasoned decision, *not* criminal charges, fines, or penalties." *Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 64 (D.D.C. 2014), *aff'd,* 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015) (emphasis in original) (citing 5 U.S.C. §§ 701-706). Nor has Plaintiff alleged a fraud. In Vermont, fraud requires an intentional and material misrepresentation that is reasonably relied upon by and causes damages to the defrauded party. *See Union Bank v. Jones*, 411 A.2d 1338, 1342 (Vt. 1980); *Madanes v. Madanes*, 199 F.R.D. 135, 148 (S.D.N.Y. 2001) (holding crime-fraud exception "is forum-specific"). Plaintiff falls far short of a plausible claim that there was a crime or fraud the withheld documents facilitated or concealed.

Moreover, "Plaintiff has offered no evidence to demonstrate that the particular communications at issue here were made in order to further or facilitate" the purported crime or fraud. *Jewell*, 66 F. Supp. 3d at 65. He simply asserts the withheld documents are relevant to rulemaking, "which is the same subject matter as the underlying wrongdoing." (Doc. 31 at 7.) This conclusory allegation will not suffice. Plaintiff must instead make "a prima facie showing" that the communications facilitated or covered up the crime or fraud before the attorney-client privilege "will yield." *Nesse v. Pittman*, 202 F.R.D. 344, 352 (D.D.C. 2001); *see In re Richard Roe, Inc.*, 168 F.3d at 71 (requiring "probable cause" of intent to facilitate or conceal). "If legal advice loses its privileged status merely because the opponent claims that the advice was sought to conceal a fraud,

11

the privilege quickly evaporates. If that were the law, few clients would dare talk to lawyers, because the privilege would disappear the moment their opponent charged a cover-up." *Nesse*, 202 F.R.D. at 351.

Plaintiff has failed to establish a factual or legal basis for his contention that Exemption 5 does not apply because SSA's communications regarding its rulemaking process with regards to migraine and headache disorders constituted a crime or a fraud which those communications facilitated or concealed. In contrast, SSA has provided adequate factual and legal support to find that the attorney-client privilege exempts from disclosure *Vaughn* Index documents 1-35 and 37-53.

### iii. Whether Records Were Properly Withheld Under the Deliberative Process Privilege.

The deliberative process privilege "is designed to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the [g]overnment." *Nat. Res. Def. Council v. E.P.A.*, 954 F.3d 150, 155 (2d Cir. 2020) (internal quotation marks and citation omitted). "In order for the privilege to apply, the agency record at issue must be (1) an inter-agency or intra-agency memorandum or letter; (2) pre-decisional; and (3) deliberative." *Id.* (citing *Tigue*, 312 F.3d at 76)). In other words, FOIA "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Am. Civ. Liberties Union v. Nat'l Sec. Agency*, 925 F.3d 576, 593 (2d Cir. 2019) (citation omitted).

SSA contends that *Vaughn* Index documents 1-35 and 37-53 are exempt from disclosure under the deliberative process privilege because they are pre-decisional and deliberative intra-agency communications. Plaintiff asserts that the *Vaughn* Index contains insufficient detail to make this determination because "the identities, positions, and job duties of the authors or recipients[]" of the documents have not been provided. (Doc. 31 at 10.) While the court "acknowledges that a properly drafted *Vaughn* Index identifies the authors and recipients in order to enable the Court to consider those

12

persons' relationships to the decision-making process[,]" *Carter, Fullerton & Hayes*, 601 F. Supp. 2d at 739, the *Vaughn* Index contains sufficient detail to review the claimed exemptions in this case.

The withheld documents are pre-decisional because they were "prepared in order to assist an agency decisionmaker in arriving at his [or her] decision[.]" *Nat'l Council of La Raza v. D.O.J.*, 411 F.3d 350, 356 (2d Cir. 2005). The documents contain legal advice and discussions regarding "working drafts of two Social Security Rulings[,]" "draft agency regulatory priorities[,]" "rule development[,]" "the agency's regulatory plans[,]" "a draft statement about a[ notice of proposed rulemaking,]" a "medical listing and related internal memo[,]" and "a draft administrative message relating to medical listings." (Doc. 26-1 at 6-9.)

The records are deliberative because they reflect "advisory opinions, recommendations[,] and deliberations comprising part of a process by which governmental decisions" regarding, among other things, medical listings and Social Security Rulings, are made. *Nat'l Council of La Raza*, 411 F.3d 3 at 356 (quoting *Tigue*, 312 F.3d at 76). They thus reflect "the give-and-take of the consult[at]ive process[.]" *Fla. House of Representatives v. U.S. Dep't of Com.*, 961 F.2d 941, 949 (11th Cir. 1992).

*Vaughn* Index documents 1-35 and 37-53 were thus properly withheld pursuant to the deliberative process privilege. Because *Vaughn* Index document 36 was properly withheld under the attorney work product doctrine and documents 1-35 and 37-53 were properly withheld under the attorney-client privilege and the deliberative process privilege, SSA's withholding of all 1,845 pages of documents is justified under Exemption 5, and the court need not determine whether withholding the same documents is also justified under Exemption 6.

    **B.**    **Whether Plaintiff is Entitled to Attorney's Fees and Costs.**

The FOIA provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i). "To be entitled to such an award, a litigant must first establish

13

eligibility by showing that he 'substantially prevailed' in his [or her] lawsuit." *Pietrangelo v. U.S. Army*, 568 F.3d 341, 343 (2d Cir. 2009). "[A] complainant has substantially prevailed if the complainant has obtained relief through . . . a judicial order, or an enforceable written agreement or consent decree[.]" 5 U.S.C. § 552(a)(4)(E)(ii)(I).

"Under our generous formulation of the term, plaintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Farrar v. Hobby*, 506 U.S. 103, 109 (1992) (internal quotation marks and citations omitted); *see also Ctr. for Popular Democracy v. Bd. of Governors of Fed. Rsrv. Sys.*, 2021 WL 4452202, at *4 (E.D.N.Y. Sept. 29, 2021) (applying *Farrar* standard in FOIA context). "In short, a plaintiff 'prevails' when actual relief on the merits of his [or her] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar*, 506 U.S. at 111–12.

Whether Plaintiff substantially prevailed here is a close call. Plaintiff did not prevail on the central issue of his case, obtaining the release of the requested records or establishing that SSA wrongfully withheld them. However, that alone does not preclude an award of attorney's fees and costs. *See Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 790 (1989) (rejecting the "central issue" test for determining whether a party prevailed for attorney's fees purposes). Plaintiff established that SSA's response to his document request was untimely and unsupported by adequate explanation. He sought and obtained a judicial order requiring SSA to refund his FOIA fees. In addition, the court's order "required defendant to undertake an action—to explain the reasons for its withholdings—and imposed a date certain for when that action must be completed. That order changed the legal relationships of the parties and, therefore, is sufficient to establish plaintiff's eligibility for attorney's fees." *Nw. Coal. for Alts. to Pesticides v. E.P.A.*, 421 F. Supp. 2d 123, 127 (D.D.C. 2006) (citation omitted). As a result, "[P]laintiff has crossed the 'statutory threshold' of prevailing party status." *Texas State Tchrs. Ass'n*, 489 U.S. at 789.

In deciding whether to award attorney's fees to a substantially prevailing party, the

court must consider: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the Government had a reasonable basis for withholding requested information." *Pietrangelo*, 568 F.3d at 343.

"The first factor assesses the public benefit derived from the case and requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought[.]" *Davy v. C.I.A.*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (internal quotation marks and citation omitted). Plaintiff argues the public derived a benefit from the legal ruling that the Open Government Act of 2007 forbids an agency from assessing fees if the agency fails to comply with time limits of FOIA. A decision which underscores the importance of making timely and adequate responses to a FOIA request and which imposes a consequence for failure to do so is likely to benefit members of the public filing FOIA requests. On the other hand, the effect of the litigation is that none of Plaintiff's requested information has been revealed to the public. This factor is thus in equipoise.

"The second and third factors, which are often considered together, assess whether a plaintiff has sufficient private incentive to seek disclosure without attorney's fees." *Id.* at 1160 (internal quotation marks and citation omitted). The parties do not dispute that Plaintiff's interests in the records were scholarly and sought to improve access to benefits for people with disabilities. Plaintiff would not derive commercial benefit from disclosure. These factors weigh in favor of an award.

"The fourth factor considers whether the agency's opposition to disclosure had a reasonable basis in law, and whether the agency [was] recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior[.]"*Id.* at 1162 (internal quotation marks and citation omitted). In the District of Columbia Circuit, "[if] the Government's position is correct as a matter of law, that will be dispositive." *Id.* (internal quotation marks and citation omitted). However, "there is no Second Circuit decision adopting [this approach], and, indeed, such an approach would appear to be in some tension with the Second Circuit's characterization of the entitlement inquiry as 'weight[ing]' the 'four

15

criteria.'" *N.Y. Times Co. v. C.I.A.*, 251 F. Supp. 3d 710, 714 (S.D.N.Y. 2017) (quoting *Pietrangelo*, 568 F.3d at 343). "Nor does the Senate Report upon which the four-factor test is ultimately based contemplate such a rigid approach." *Id.* (citations omitted). Against this backdrop, the reasoning of *N.Y. Times Co.* is persuasive. The fact that SSA had a valid legal basis for its initial withholding is not dispositive and must be weighed against SSA's "obdurate behavior[.]" *Davy*, 550 F.3d at 1162. As the court observed:

> [A]lthough Plaintiff's FOIA request was unreasonably broad and burdensome, Defendant provided Plaintiff with no opportunity to narrow it but instead waited until Plaintiff filed an appeal to conduct a more thorough search. In doing so, Defendant failed to comply with FOIA's deadlines. Had Defendant acted in a timely manner and rejected Plaintiff's initial request, Plaintiff could have narrowed it and obtained responsive documents for his scholarly endeavors. Defendant offered Plaintiff no explanation as to why the withheld documents were supported by FOIA exemptions and offers no explanation to this court. . . . As Defendant concedes its first search was too narrow, it not only substantially contributed to the delay in this case, but impeded Plaintiff's request for documents in furtherance of the public interest.

*Shapiro v. U.S. Soc. Sec. Admin.*, 525 F. Supp. 3d 528, 542–43 (D. Vt. 2021).

Considering the totality of the circumstances, a partial award of reasonable attorney's fees and costs to Plaintiff is warranted. "[I]n cases where plaintiffs have not achieved complete success[,]" the "most critical factor is the degree of success obtained." *Texas State Tchrs. Ass'n*, 489 U.S. at 789 (internal quotation marks and citations omitted). "[D]istrict courts should exercise their equitable discretion in such cases to arrive at a reasonable fee award, either by attempting to identify specific hours that should be eliminated or by simply reducing the award to account for the limited success of the plaintiff." *Id.* at 789-90 (citation omitted).

Plaintiff's request for an award of attorney's fees and costs is GRANTED IN PART. The court ORDERS Plaintiff to submit a statement of reasonable attorney's fees and costs incurred in this case, supported by an affidavit, within thirty days from the date of this Opinion and Order. *See N.Y. Times Co.*, 251 F. Supp. 3d at 713 ("[A] court determines whether the fee requested by an eligible and entitled applicant is

'presumptively reasonable' under the lodestar approach generally applied to fee applications in the Second Circuit."). In doing so, Plaintiff must identify the fees and costs expended on the issues on which he prevailed. SSA may oppose Plaintiff's calculation of fees within fourteen (14) days of Plaintiff's filing.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Plaintiff's request for attorney's fees and costs and ORDERS Plaintiff to submit a statement of reasonable attorney's fees and costs incurred in this case, supported by an affidavit, within thirty days from the date of this Opinion and Order. Plaintiff must identify the fees and costs expended on the issues on which he prevailed. SSA may oppose Plaintiff's calculation of fees within fourteen (14) days of Plaintiff's filing.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 10th day of December, 2021.

*/s/ Christina Reiss*

_____
Christina Reiss, District Judge
United States District Court